## GOCKSTETTER v. WILLIAMS.

(Circuit Court of Appeals, Ninth Circuit. November 19, 1925.)

No. 4701.

1. **Banks and banking ☞287(3)—Receiver's sale of assets of insolvent national bank need not be for cash or for amount definitely determined.**

Under Rev. St. §§ 5234, 5236 (Comp. St. §§ 9821, 9823), receiver's sale of assets of national bank in course of liquidation need not be for cash or for a price definitely fixed at time of sale, if provisions are made for rendering it certain.

2. **Banks and banking ☞287(3)—Receiver's sale of assets of insolvent national bank held authorized under statute.**

Receiver's sale of all assets of insolvent national bank to new bank, by terms of which new bank assumed liability for all preferred and secured claims against insolvent bank, guaranteed unsecured creditors 50 per cent. of their claims, to be paid in five annual installments, unpaid installments being evidenced by deposit slips, and in return took as its own all assets except claims scheduled as slow or doubtful, which were transferred to 3 trustees for benefit of unsecured creditors, subject only to lien of new bank for amount by which obligations assumed by it exceeded assets listed as good, *held* authorized by Rev. St. §§ 5234, 5236 (Comp. St. §§ 9821, 9823), and not an unauthorized barter.

3. **Banks and banking ☞287(3)—Receiver of insolvent national bank may sell collectible assets.**

Under Rev. St. §§ 5234 and 5236 (Comp. St. §§ 9821, 9823), receiver of insolvent national bank may sell collectible debts, rather than make actual collection.

4. **Banks and banking ☞234—"Personal property," as used in banking statute, defined and held entitled to broad construction.**

In broad and general sense, "personal property" includes everything that is the subject of ownership, not coming under denomination of real estate, and, as used in Rev. St. § 5234 (Comp. St. § 9821), relating to sales of assets of insolvent national bank associated with "real property," should be given broad construction.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Personal Property.]

5. **Banks and banking ☞287(3)—Receiver of insolvent national bank held authorized to sell cash collected and available for distribution.**

Receiver of insolvent national bank *held* authorized by Rev. St. § 5234 (Comp. St. § 9821), to sell all assets, including cash already collected and available for distribution.

6. **Banks and banking ☞287(3)—Receiver's sale of assets of insolvent national bank held not invalid because of manner of distribution of proceeds to creditors.**

Receiver's sale of all assets of insolvent national bank, by which new bank assumed all preferred and secured claims against insolvent bank, guaranteed unsecured creditors 50 per cent. of their claims to be paid in five equal annual installments, unpaid installments being evidenced by deposit slips, and in return took as its own all assets except claims scheduled as doubtful, which were transferred to trustee for benefit of unsecured creditors, subject only to lien of new bank for amount by which the obligations assumed by it exceeded assets listed as good, *held* not unauthorized under Rev. St. § 5236 (Comp. St. § 9823), because new bank's certificates and trustees' dividends were payable directly to creditors, rather than into United States Treasury, to be disbursed by Comptroller.

7. **Banks and banking ☞287(3)—Receiver's sale of assets of insolvent national bank held not invalid as relieving receiver and Comptroller of statutory duties.**

Receiver's sale of assets of insolvent national bank under Rev. St. §§ 5234, 5236 (Comp. St. §§ 9821, 9823), *held* not invalid, because, as an incident thereto, claims scheduled as doubtful were transferred to trustees for benefit of unsecured creditors, on theory that such trust relieved receiver and Comptroller of statutory duties.

8. **Receivers ☞135—In authorizing sale of property by receivers, courts of equity are vested with broad discretion as to prices and terms.**

In authorizing sale of property by receivers, courts of equity are vested with broad discretion as to prices and terms.

Appeal from the District Court of the United States for the District of Montana; Charles N. Pray, Judge.

Suit by William Gockstetter against Fred D. Williams, as receiver of the First National Bank of Fergus County in Lewiston, Mont., to enjoin the execution of a contract for the sale of assets. From a decree of dismissal, plaintiff appeals. Affirmed.

S. C. Ford, Wellington D. Rankin, and Frank Woody, all of Helena, Mont., for appellant.

E. K. Cheadle, of Lewistown, Mont., and William F. Humphrey and Robert Mack Light, both of San Francisco, Cal., for appellee.

Before GILBERT, RUDKIN, and McCAMANT, Circuit Judges.

McCAMANT, Circuit Judge. On the 10th of December, 1923, the First National Bank of Fergus County closed its doors; appellee was appointed receiver and proceeded with the liquidation of its assets. On the 28th of December, 1924, the United States District Court for the District of Montana entered an order authorizing appellee to dispose of the miscellaneous assets

of the bank to a new bank, to be organized under the name of National Bank of Lewistown. Certain depositors took an appeal from this order, and their appeal was dismissed by this court. Fifer v. Williams (C. C. A.) 5 F. (2d) 286. In the opinion passed at that time it was said: "For an attempt to make an illegal or fraudulent sale, doubtless a remedy by suit would lie, and from a decision in such a suit appeal could be taken to this court."

Thereupon appellant, a depositor of the insolvent bank in the sum of $6,200, brought this suit to enjoin the execution of the order passed December 28, 1924. The proposed disposition of the assets is attacked as illegal.

The order is too lengthy to be inserted in this opinion. It authorizes the receiver "to sell all of the right, title, and interest of said First National Bank of Fergus County or of said receiver in and to the assets of said bank, consisting of cash, bills receivable, bonds, stocks, judgments, evidence of debt, and articles of personal property of every kind whatsoever, and all real estate and equities in real estate" excepting the unpaid stock assessments, money paid or to be paid thereon, rights of action against the directors of the bank, and sufficient cash to defray the expenses of the receivership up to the date of sale.

The new bank is required by the order to pay 50 per cent. of the claims of the unsecured creditors in five equal installments. The first of these installments is to be paid as soon as practicable, not later than 30 days after the sale. The other installments are payable on the 1st of December, 1925, 1926, 1927, and 1928, respectively. The obligation of the new bank with reference to these payments is to be evidenced by its certificates of deposit, bearing interest at the rate of 2½ per cent. per annum.

The new bank is also required to assume and pay the indebtedness of the insolvent bank to the Federal Reserve Bank of Minneapolis and other secured and preferred claims to the same extent as they would be payable by the receiver.

The assets of the insolvent bank are listed in two schedules entitled C and D, respectively. Schedule C is a list of the live and good assets. These are to become and remain the property of the new bank. Schedule D is a list of the slow and doubtful assets. The new bank agrees to assign these assets to three trustees, who are to execute to the new bank certificates of indebtedness equal to the difference between the liabilities of the old bank assumed or paid by the new bank and the face value of the assets listed in schedule C. The indebtedness evidenced by these certificates is to constitute a first lien on the assets listed in schedule D.

The new bank is to have the right for a limited time to take over any of the assets listed in schedule D, crediting the value thereof on the indebtedness owing to it by the trustees. In the event that the parties cannot agree on the credit to be given on any such transfer, the matter is to be referred to the United States District Court for the District of Montana.

After the payment of the indebtedness of the trustees to the new bank, the funds arising from the liquidation of the assets listed in schedule D are to be distributed pro rata to the creditors of the insolvent bank. The trustees are named in the order. They are required to furnish bonds to secure the faithful performance of their duties. They are subject to removal and replacement by the District Court. There are other matters of detail, but the substance of the order is as above stated.

The evidence before the court when this order was passed has not been made a part of the record. The evidence taken in the injunction suit establishes that the plan outlined has the approval of the Comptroller of the Currency, the receiver, and the holders of 95 per cent. of the claims against the insolvent bank. Since the order was passed, the new bank has been chartered, its capital and surplus have been paid in, and it is now a solvent, going concern. The litigation has consumed so much time that in case the decree is affirmed the new bank will be required to pay 20 per cent. of the unsecured claims against the insolvent bank without appreciable delay.

The statute applicable is section 5234 of the Revised Statutes (section 9821 of the Compiled Statutes; section 9272 of Barnes' Code). In so far as it is material here, this statute is as follows:

"Such receiver, * * * upon the order of a court of record of competent jurisdiction, may sell or compound all bad or doubtful debts, and, on a like order, may sell all the real and personal property of such association, on such terms as the court shall direct; and may, if necessary to pay the debts of such association, enforce the individual liability of the stockholders. Such receiver shall pay over all money so made to the Treasurer of the United States, subject to the order of the Comptroller." Section 5236, R. S. (Comp. St. § 9823) makes

provision for the disbursement of this money in ratable dividends.

It has been held that there is a distinction between sale and barter, and that under this statute there is no authority to barter away the assets of an insolvent national bank. Ellis v. Little, 27 Kan. 707, 719, 41 Am. Rep. 434. Appellant contends that the order complained of provides for a barter, and that therefore it is ultra vires.

"A sale may be defined as a contract, founded on a money consideration, by which the absolute or general property in the subject of sale is transferred from the seller to the buyer." 24 Am. & Eng. Encyc. Law, 1022.

[1] It is of course clear that the money consideration need not be paid in cash. Sales on credit are familiar to us all. Moreover "the price need not be fixed at the time of sale, if the agreement contains express or implied provisions by which it may be rendered certain." 23 R. C. L. 1278; Francis-Chenoweth Co. v. Gray, 104 Ala. 236, 15 So. 911, 53 Am. St. Rep. 37; Hill v. Hill, 1 N. J. Law, 261, 1 Am. Dec. 206; Neally v. Wilhelm, 4 G. Greene (Iowa) 240, 61 Am. Dec. 118.

[2] We think the contemplated transaction is a sale within the above rules. The property transferred includes all the assets of the insolvent bank with the exceptions noted in the order. The price is a sum of money equal to the face of the preferred and secured claims, one-half of the unsecured claims, plus the amount realized from the liquidation of the assets listed in schedule D after the payment of the new bank's lien thereon. This price will become certain with the lapse of time and the progress of the liquidation.

[3] It is contended that the statute gives the receiver no power to sell the collectible debts due a national bank, and that in all cases it is the duty of the receiver to collect these debts. Banks usually include in their assets municipal and corporation bonds payable many years in the future. We cannot impute to Congress an intention to continue the process of liquidation until all the collectible debts of a bank are collected, without language in the statute imperatively demanding such a construction. It is the policy of the Treasury Department to complete the liquidation of insolvent banks within a reasonable time, and with this end in view to sell assets. This procedure is warranted by the statute. The receiver, after securing a proper order, "may sell all the real and personal property on such terms as the court shall direct."

[4] "In its broad and general sense, personal property includes everything which is the subject of ownership not coming under the denomination of real estate." 32 Cyc. 667; 2 Kent's Commentaries, 340; Woodward v. Laporte, 70 Vt. 399, 41 A. 443; Matter of Althause, 63 App. Div. 252, 71 N. Y. S. 445, 447; Boyd v. Selma, 96 Ala. 144, 149, 11 So. 393, 16 L. R. A. 729, 731. Where, as in this statute, the words "personal property" appear associated with "real property," they should ordinarily receive this broad construction. Bellows v. Allen, 22 Vt. 108, 110.

Liquidation is expensive. It always involves a shrinkage in the value of assets. Congress has therefore made provision for bringing the liquidation of the assets of national banks to an end by providing for the sale of any or all of the assets. The sale may be for cash or on terms. The rights of the creditors are protected by the requirement of an order of a court of record before making a sale. This order, if for the sale of all or a large proportion of the assets, should be passed only after notice to the creditors and a hearing, as was the course pursued in this case.

[5] What we have just said answers appellant's contention that there is no power to sell the cash already collected and available for distribution. Cash is personal property within the above definition and within the purview of the above statute. The power to sell an insolvent estate as an entirety is a power useful in liquidating assets, and it should not be circumscribed by a narrow construction of the statute in its application to cash and assets readily convertible into cash. This contention of appellant is technical rather than substantial, because the record shows that the preferred claims and 20 per cent. of the general claims amount to a larger sum than the cash in hand. In other words, the purchasing bank will pay out a larger sum than it will receive on the consummation of the sale.

[6] Appellant also complains that the moneys to be paid to the creditors are not to be paid into the United States Treasury and disbursed by the Comptroller. It is not clear that the provision of the statute on this subject is applicable to any moneys except those which come into the hands of the receiver. The evidence fails to show that appellant and the other dissenting depositors are likely to be injured by the payment

of the new bank's certificates and the trustees' dividends directly to the creditors, and without such showing this part of the plan should not be enjoined. 14 R. C. L. 354.

The evidence is that the new bank is in a position to make the payments as they mature, and that in the meantime its certificates of deposit will strengthen the credit of the creditors receiving them.

[7, 8] It is also contended that the order is illegal, in that it relieves the receiver and the comptroller of their statutory duties, and substitutes therefor an unauthorized trust. But the receiver and comptroller are relieved of their responsibilities by a sale of the assets. Such a sale is authorized by the statute. When effected, it will transfer the title of the assets, and thereafter the insolvent bank and its receiver will have no interest therein. The new trust is an incident to the sale. It provides for the impounding of a part of the assets, for their economical liquidation with a prospect that the general creditors will receive money therefrom in addition to the sums assured them by the new bank. It is competent for the court to approve such a trust as an incident to the contract of sale. In authorizing the sale of property by receivers, courts of equity are vested with a broad discretion as to price and terms. Stokes v. Williams, 226 F. 148, 156, 141 C. C. A. 196; 14A Corpus Juris, 1007, § 3257. The authority to fix terms of sale in this case is statutory.

In performing the duties called for in removing and replacing trustees and in fixing the price of assets in Exhibit D, the Judge of the District Court will act extrajudicially as referee or arbitrator; it is competent for the parties interested to call upon him in this capacity.

We cannot say that the order complained of is illegal.

The decree is affirmed.