## FIDELITY & DEPOSIT CO. OF MARYLAND et al. v. KOKRDA.

### No. 809.

Circuit Court of Appeals, Tenth Circuit.

Aug. 12, 1933.

L. Ward Bannister, of Denver, Colo. (Thos. A. Mapes and Samuel M. January, both of Denver, Colo., on the brief), for appellants.

Archibald A. Lee, of Denver, Colo., for appellee.

Before PHILLIPS and McDERMOTT, Circuit Judges, and KENNEDY, District Judge.

PHILLIPS, Circuit Judge.

Worrall was the duly elected and qualified treasurer of Elbert County, Colorado, for the term beginning January 1, 1931, and ending January 1, 1933. The Fidelity & Deposit Company, hereinafter called the surety company, was the surety on his official bond. On January 9, 1931, the surety company and the First National Bank of Deer Trail entered into a contract of pledge, the material portions of which are set out in Note 1.

On October 13, 1931, Kokrda was duly appointed receiver of the bank by the Comptroller of the Currency. Thereafter such receiver brought this action and alleged that the bank was the owner of four federal land bank bonds of the face value of $1,000 each, and that on January 9, 1931, the surety company wrongfully took possession of such bonds and has since wrongfully and unlawfully detained them. He sought recovery of the bonds or their value, and damages for their unlawful detention.

The surety company filed an amended answer, and Worrall filed a petition in intervention in which they alleged: That Worrall was the treasurer of Elbert County; that the surety company was surety on Worrall's official

---

Note 1. "Whereas, James W. Worrall has been duly elected Treasurer of Elbert County in the State of Colorado, and as such Treasurer at the special instance and request of the First National Bank of Deer Trail, Colorado, and on the security hereinafter described, has deposited or may hereafter from time to time deposit certain moneys with the First National Bank of Deer Trail, Colorado, in regular course of business which deposits will be evidenced by demand certificates of deposit in customary form.

"And, Whereas, said First National Bank of Deer Trail, Colorado, has delivered to the Fidelity and Deposit Company of Maryland the following described bonds. * * * (Here follows a detailed description of the bonds involved herein.)

Now, Therefore, if the First National Bank of Deer Trail shall promptly pay to the said James W. Worrall or his order, upon demand in regular course of business, all moneys which have been or shall hereafter be deposited with said First National Bank of Deer Trail as aforesaid, by or on behalf of the said James W. Worrall, County Treasurer; and shall keep and hold harmless the said James W. Worrall as well as the Fidelity and Deposit Company of Maryland as surety on James W. Worrall's official bond, of, and from all loss or damages which may arise or accrue to the said James W. Worrall or the Fidelity and Deposit Company by reason of the deposit or delivery of said funds, or any part thereof, * * * then this obligation to be void, otherwise to remain in full force and virtue.

"This receipt is issued in duplicate, the duplicate to be held by the Fidelity and Deposit Company of Maryland, as security on the official bond of James W. Worrall, Treasurer of Elbert County and the original to be held by the First National Bank of Deer Trail. * * *"

bond; that Worrall, during his term of office, kept certain public moneys on deposit in the bank, and in order to protect Worrall, and with the knowledge and consent of Worrall, the bank executed such contract of pledge and delivered the bonds to the surety company; that on October 13, 1931, the bank became insolvent and closed its doors; that on that date there was on deposit in the bank public funds of Elbert County in the sum of $3,764.88, together with accrued interest of $40.00; and that demand was made upon the bank and upon the receiver for the payment of such deposit, and the same refused.

The trial court sustained demurrers to the amended answer and petition in intervention. The surety company and Worrall elected not to plead further. The trial court rendered judgment in favor of the receiver for the return of the bonds and for damages.

The Act of June 25, 1930 (46 Stat. 809), section 90, title 12 USCA, in part reads as follows:

"Any association may, upon the deposit with it of public money of a State or any political subdivision thereof, give security for the safe-keeping and prompt payment of the money so deposited, of the same kind as is authorized by the law of the State in which such association is located in the case of other banking institutions in the State."

Section 1, c. 83, p. 280, Colo. S. L., 1927, provides that each county treasurer shall deposit all public funds coming into his possession "in one or more responsible banks located in * * * Colorado"; that before making such deposits the treasurer may take from said bank or banks a bond conditioned that such deposits shall be promptly paid on the check or draft of the treasurer; that such depository bank may give in lieu of such depository bond certain kinds of bonds or other interest-bearing securities including "Farm Loan Bonds issued by any Federal Land Bank or joint stock land bank, * * * to be held by such Treasurer as security for the prompt payment of such deposit or deposits"; that such bonds or securities given in lieu of a depository bond shall be deposited in the custody of some national bank in Colorado, or in a bank or trust company doing business under the laws of Colorado, under an escrow agreement executed in triplicate by the treasurer, the depository bank; and the escrow holder, to the effect that such securities shall be held and safely kept by such escrow holder as security for the prompt payment of such deposits on the check or draft of the treasurer; and that one copy of such escrow agreement shall be kept by the depository bank, one by the county treasurer, and one by the escrow holder.

The contract of pledge in the instant case was not entered into between the bank and Worrall as treasurer, but it was entered into for his express benefit. The surety company was made the escrow agent, instead of a national bank located in Colorado, or a state bank or trust company. The contract was not entered into in triplicate, and a copy thereof was not delivered to the treasurer. Except as above indicated, the pledge of collateral security complied with chapter 83, supra.

Counsel for the receiver contends that, since the pledge was not made in strict accord with chapter 83, supra, it was unauthorized by the provisions of section 90, supra, and that the receiver was entitled to recover such bonds without first accounting to the treasurer for the county moneys deposited with the bank.

Section 90, supra, does not say a national bank may give security in the same *manner*, but that it may give security of the same *kind* as a state bank may give. *Kind* means class, character, sort, description. Webster's New International Dictionary. Had Congress intended to limit the manner of giving the security, we think it would have said, "of the same kind and in the same manner," or used words of equivalent import. The plain purpose of the statute was to remove any doubt of the power of national banks to give security for public deposits, and in that respect to enable them to invite public deposits on an equal footing with state banks. Baltimore & O. R. Co. v. Smith (C. C. A. 3) 56 F.(2d) 799, 802. It is our opinion that it authorizes a national bank to give the same kind of security for public deposits as state banks are authorized to give, in a state in which such national bank is situate, and leaves to state law the question of the procedure to be followed in the giving of such security. But if it authorizes a national bank to give security for public deposits only in compliance with the provisions of state law, the power existed to pledge the bonds, and the only question is, whether there was such a substantial compliance with chapter 83, supra, as would bind the bank.

An examination of the cases relied on by counsel for the receiver has led us to the conclusion that many of them are distinguishable from, and do not control the instant case. For example: In Sneeden v. City of Marion (C. C. A. 7) 64 F.(2d) 721, 729, the court said:

"Section 316, c. 24, Smith-Hurd Rev. St. Ill. 1931, and paragraph 374, supra, expressly provides that before any Illinois bank may receive a deposit of public funds, of the kind herein described, it shall execute a bond with sureties approved by the president of the city council, as security for the return of the money deposited; and it is not authorized to give, nor is the treasurer authorized to accept, other security."

There, the bank was not authorized to secure the deposit by securities which it undertook to pledge for that purpose. It was authorized to secure the deposit only by a surety bond. Here, the bank was expressly authorized to pledge the bonds, but failed to do so in exact accord with the statute. In Parks v. Knapp (C. C. A. 8) 29 F.(2d) 547, the sureties on the depository bond undertook to hold the collateral pledged to protect themselves. Here, the appellants are undertaking to hold the pledged collateral to protect the county, for whose benefit the bank had express power to make the pledge. Texas & P. R. Co. v. Pottorff (C. C. A. 5) 63 F.(2d) 1, 3, concerned a private deposit, and a dictum therein, as we shall presently show, sustains the contention of appellants.

■■ While there are decisions to the contrary, the rule supported by many well reasoned decisions is that where the legislature of a state has declared by express statutory enactment that deposits of public funds shall be secured, thereby indicating that the public policy of the state is not only to permit but to require the securing of such deposits, contracts to secure such deposits made in good faith should be sustained, although not entered into in exact accord with the statutory requirements.

In Texas & P. Ry. Co. v. Pottorff, supra, the court said:

"Cases, and these are supported, we think, by the better reasons, holding that, where the Legislature of a state has declared in specific statutes that deposits of public money must be secured this sufficiently indicates the public policy of the state toward the securing of public deposits, to sustain contracts whether in exact accordance with the statute or not, made in good faith for their security, are, First Am. Bank & Trust Co. v. Palm Beach, 96 Fla. 247, 117 So. 900, 65 A. L. R. 1398, 1400; Melaven v. Hunker, 35 N. M. 408, 299 P. 1075; Cameron v. Christy, 286 Pa. 405, 133 A. 551; McFerson v. Nat. Surety Co., 72 Colo. 482, 212 P. 489; c/f Michie Banks & Banking, Vol. 4, p. 22, § 19."

The treasurer deposited the public moneys in the bank. It was the duty of the bank to give security therefor in accordance with the provisions of chapter 83, supra. This it undertook to do by pledging proper securities and depositing them with the surety company, instead of with an authorized bank. Under these circumstances we are of the opinion that the bank is bound by the pledge and cannot defeat it by setting up that it did not pledge the bonds in strict compliance with the statute. Schornick v. Butler (Ind. Sup.) 185 N. E. 111, 112; Melaven v. Hunker, 35 N. M. 408, 299 P. 1075; Williams v. Earhart, 34 Ariz. 565, 273 P. 728.

Furthermore, the bank has not returned the deposit. When it received the deposit, it was its duty to secure the same in the manner provided in the statute. Under such circumstances it ought not to be permitted to recover the security without returning the deposit. Schornick v. Butler, supra; State Bank of Commerce v. Stone, 261 N. Y. 175, 184 N. E. 750, 754; Melaven v. Hunker, supra.

Reversed and remanded with instructions to overrule the demurrers.