## HAYNES v. CITY OF WOODWARD, OKL., et al.

### No. 4911.

District Court, W. D. Oklahoma.

Feb. 19, 1934.

Howard Patton, of Woodward, Okl., and John Barry, of Oklahoma City, Okl., for plaintiff.

M. M. Thomas, of Oklahoma City, Okl., for defendants.

VAUGHT, District Judge.

The stipulation filed herein waives trial by jury and admits all jurisdictional facts, that the plaintiff is the receiver of the First National Bank of Woodward, Okl., which bank failed on the 18th day of January, 1932; that the treasurer of the city of Woodward had deposited to the credit of said treasurer with said bank at the time it failed the sum of $145,450.88; that there had been delivered to said treasurer, to secure payment of said deposits by said bank, bonds in the sum of $120,000, $28,000 of which were Woodward, Okl., bonds and $92,000 of which were United States Liberty bonds.

It is further stipulated that said deposits were received and said bonds delivered to said treasurer to secure said deposits by L. L. Stine, as president, and H. H. Stallings, as cashier of the bank; that the president and cashier of the bank were the responsible parties in charge of said bank.

The receiver brought this action to secure the possession of said bonds and contends in his petition that the bank acted beyond its power in delivering said securities, assets of said bank, to the city treasurer to guarantee payment of said deposits, for the reason that said assets were not delivered to the city treasurer as provided by law, in that no meeting of the board of directors was had at which, by a majority vote, the board authorized the officers of the bank to accept said deposits and deliver said assets of the bank to said city treasurer as security for said deposits.

The city for its defense alleges that the money belonging to said city was deposited in good faith with the bank. At the time of the deposit the treasurer of said city received said assets of said bank for the protection of said city and its treasurer in making said deposit in said bank.

The Act of June 25, 1930 (46 Stat. 809), section 90, title 12 USCA, in part reads as follows: "Any association may, upon the deposit with it of public money of a State or any political subdivision thereof, give security for the safe-keeping and prompt payment of the money so deposited, of the same kind as is authorized by the law of the State in which such association is located in the case of other banking institutions in the State."

Section 9115, Okla. Stat. 1931, provides in part as follows: "No bank, banker or bank official shall give preference to any depositor or creditor by pledging the assets of the bank as collateral security or by selling or transferring any of the assets of any insolvent bank in consideration of any deposit in such bank; provided, any bank, by the unanimous consent of its board of directors, expressed by resolution duly entered in the minute book of such bank, may pledge the assets of such bank, except promissory notes, as security for postal savings funds, government funds, Indian funds under the control of the Federal Government, state funds of the State of Oklahoma, county, township, city, town, school district, benevolent or fraternal association funds deposited in such bank in all cases where no surety bond is given to secure such deposits. * * *"

We therefore have before us a federal stat-

ute authorizing a national bank to accept deposits of municipalities and to pledge assets of the bank to the said municipalities as security for said deposits..

We also have the state statute which provides that state banks may pledge the assets of said banks for city and other municipal deposits.

The question then for determination is whether or not the city, in accepting said pledge of assets, was protected therein by the federal statute.

In Fidelity & Deposit Company of Maryland et al. v. Kokrda, as Receiver, 66 F.(2d) 641, 642, the Circuit Court of Appeals for the Tenth Circuit, in a case from Colorado, in which the national bank departed from the provisions of the Colorado state statute in pledging its assets to guarantee a deposit by depositing its assets with the Fidelity & Deposit Company for and on behalf of the municipality, and in which the receiver of the bank contended that the pledge was not made in strict accordance with the state statute, and therefore the receiver was entitled to recover certain bonds covered by the pledge, said: "Section 90, supra, does not say a national bank may give security in the same manner, but that it may give security of the same kind as a state bank may give. Kind means class, character, sort, description. Webster's New International Dictionary. Had Congress intended to limit the manner of giving the security, we think it would have said, 'of the same kind and in the same manner,' or used words of equivalent import. The plain purpose of the statute was to remove any doubt of the power of national banks to give security for public deposits, and in that respect to enable them to invite public deposits on an equal footing with state banks. Baltimore & O. R. Co. v. Smith (C. C. A. 3) 56 F.(2d) 799, 802. It is our opinion that it authorizes a national bank to give the same kind of security for public deposits as state banks are authorized to give, in a state in which such national bank is situate, and leaves to state law the question of the procedure to be followed in the giving of such security. But if it authorizes a national bank to give security for public deposits only in compliance with the provisions of state law, the power existed to pledge the bonds, and the only question is, whether there was such a substantial compliance with chapter 83 (Laws Colo. 1927), supra, as would bind the bank."

The same learned court continues: "The treasurer deposited the public moneys in the bank. It was the duty of the bank to give se-

curity therefor in accordance with the provisions of chapter 83, supra. This it undertook to do by pledging proper securities and depositing them with the surety company, instead of with an authorized bank. Under these circumstances we are of the opinion that the bank is bound by the pledge and cannot defeat it by setting up that it did not pledge the bonds in strict compliance with the statute."

In this case the city treasurer of Woodward deposited the public money of said municipality with the bank. The treasurer had her dealings with the president and the cashier of the bank, who were authorized to transact the business of the bank by the board of directors of said bank, and the treasurer, acting in good faith, had a right to rely upon the acts of the president and the cashier of the bank as being the acts authorized by the governing body of the bank. In Fidelity & Deposit Company v. Kokrda, supra, the court further says in this connection: "Furthermore, the bank has not returned the deposit. When it received the deposit, it was its duty to secure the same in the manner provided in the statute. Under such circumstances it ought not to be permitted to recover the security without returning the deposit."

Counsel for plaintiff and for defendants in their respective briefs have referred to the case of Sneeden v. City of Marion, Illinois (D. C.) 58 F.(2d) 341, from the Eastern district of Illinois. The briefs referred to a District Court opinion dismissing the bill. In that case, however, the judgment of the lower court was reversed by the Circuit Court of Appeals for the Seventh Circuit, 64 F.(2d) 721, and in a recent opinion by the Supreme Court of the United States, dated February 5, 1934, the judgment of the Circuit Court of Appeals was affirmed, City of Marion v. Sneeden, 54 S. Ct. 421, 422, 78 L. Ed. ——. The court says:

"* * * We are of opinion that the Act of 1864 did not confer the power to pledge assets to secure any public deposits except those made under section 45 by the Secretary of the Treasury of the United States. The power conferred by each later act, except that of 1930, was limited to securing specific federal funds. A national bank could not legally pledge assets to secure funds of a state, or of a political subdivision thereof, prior to the 1930 amendment; and since then it can do so legally only if it is located in a state in which state banks are so authorized. In some states national banks

had, prior to the 1930 amendment, frequently pledged assets to secure public deposits of the state or of a political subdivision thereof; comptrollers of the currency knew that this was being done; and they assumed that the banks had the power so to do. But the assumption was erroneous. The contention that such power is generally necessary in the business of deposit banking has not been sustained. * * *

"No Illinois statute confers in express terms upon banks organized under its laws either the general power to pledge assets to secure a deposit; or the general power to pledge assets to secure public deposits. A statute confers in terms the power to pledge assets to secure deposits of the states but there is none which so confers the power to pledge assets to secure public deposits of a political subdivision of the state."

Our highest court, therefore, in affirming the Circuit Court of Appeals in reversing the District Court case (City of Marion v. Sneeden, Receiver), in which the receiver of a bank sought to recover assets of the bank pledged to the city of Marion, Ill., to secure a city deposit when the laws of Illinois provided that a state bank could pledge its assets to secure the deposits of the state only, and made no provision for pledging the assets of a state bank to secure the deposits of a political subdivision of the state, based its decision upon the lack of authority granted by state statute to a state bank to guarantee a deposit of a political subdivision of the state.

■ The conclusion, therefore, to which this court is forced, is that, since the Oklahoma statute, section 9115, supra, expressly provides for the pledging of assets by a state bank as security for deposits of a political subdivision of the state and specifically of a city, town, township, county, or school district, and since the national bank of which the plaintiff is the receiver accepted the deposits of the city of Woodward and pledged for their security bonds which constituted assets of said bank, said pledge was consistent with the state law governing state banks and said federal statute and the receiver is not entitled to recover said bonds so pledged to said city.

■ It is true that originally the bonds were given by the bank to the treasurer of the city of Woodward to secure the deposit prior to June 25, 1930, the date on which the federal law was enacted. However, the Woodward bonds amounting to $28,000 were continued in the possession of the treasurer of the city of Woodward, after the enactment of the law herein set out of June 25, 1930, and, by the acts and conduct of both the city treasurer and of the bank subsequent to June 25, 1930, were treated as a pledge to the city to secure said deposit. The government bonds in the sum of $100,000 were pledged on March 26, 1930. On December 3, 1930, however, these bonds were surrendered, and there was substituted therefor United States Treasury bonds of the par value of $101,950. This act was approved by the officers of the bank. On June 10, 1931, the $101,950 of Treasury bonds were surrendered pursuant to the instructions of the First National Bank of Woodward and there was reissued to the treasurer $91,950 in bonds on a joint custody receipt signed by the First National Bank of Woodward; $10,000 of these bonds were surrendered to the bank.

However, the conduct of the bank at all times subsequent to June 25, 1930, approving the pledge to the city of Woodward, in the judgment of the court, would have the same effect as if said entire pledge had been made subsequent to June 25, 1930.

Judgment will be rendered in favor of the defendants, and an exception will be allowed the plaintiff. Form of judgment may be prepared consistent with this opinion.