HAYNES v. UNITED STATES FIDELITY & GUARANTY CO. et al.

No. 4906.

District Court, W. D. Oklahoma.
Feb. 19, 1934.

Howard Patton, of Woodward, Okl., and John Barry, of Oklahoma City, Okl., for plaintiff.

C. W. Herod, of Woodward, Okl., and Owen & Lindsey and M. M. Thomas, all of Oklahoma City, Okl., for defendants.

VAUGHT, District Judge.

This matter is submitted to the court upon a stipulation of facts, a jury having been waived. The stipulation admits all jurisdictional facts. By stipulation Geo. L. Aycock, receiver, is substituted for Sidney W. Haynes, receiver, as plaintiff. The plaintiff, as receiver of the First National Bank of Woodward, brings this action against the United States Fidelity & Guaranty Company and the city of Woodward, as intervener, alleging that the defendant guaranty company has in its possession and under its control certain securities belonging to the said bank and to the receiver thereof.

The facts stipulated are that on December 30, 1929, to secure a deposit of $25,000 made by said city with said bank, the said bank executed a surety bond in the sum of $25,000 and to secure said guaranty company against loss from making said bond the said bank deposited the securities set out in the plaintiff's petition with said guaranty company and that said bond was continued from year to year and until the 30th day of December, 1931. On or about the 15th day of December, 1931, and prior to the expiration date of said bond, the said city of Woodward, through its attorney and its treasurer, advised the managing officers of said bank that said bond would

soon expire and that said city wanted to withdraw its funds secured thereby unless said deposit was secured as by law required; that said bank, through its officers, assured the city attorney and the treasurer of the city of Woodward that the bond would be continued in force and effect and that the premium therefor had been paid by said bank and the continuation certificate issued by the bonding company was expected daily; that thereafter and immediately prior to December 30, 1931, the said city attorney again went to said bank and made a similar inquiry and demand, and again was assured by said bank and its officers that said bond would be renewed at its expiration and continued in full force and effect; that the representations of said bank and its officers were believed and were relied upon by the defendant city and its officers, who were thereby lulled into a sense of security until after December 30, 1931; that on January 12, 1932, the said city and its officers learned that said representations of said bank and its officers were not true; that said depository bond had not been renewed or continued in force and effect by said defendant surety company and no premiums therefor had been paid by said bank nor accepted by said surety company; that thereupon said city through its officers demanded payment of its deposit in the sum of $25,000; that said demand was refused, and said city and its officers were informed by said bank and its officers that the presentation of a check for said sum would be a vain and useless thing and that said deposit would not be paid by said bank and that the presentation of said check would result in the closing of said bank.

Thereupon, on January 12, 1932, the representatives of the city demanded the bonds and securities in the hands of the bonding company as a temporary substitute for the expired bond, and the bank authorized the bonding company to deliver the securities in the sum of $42,000 to the city, and in addition thereto gave the city $1,000 in bonds from the assets of the bank, or a total sum of $43,000.

There is little or no difference in the contentions of the respective parties as to what actually occurred. This depository bond in the sum of $25,000 made to secure the deposit of the city of Woodward in said bank, was in full force and effect on December 15, 1931, and, while it was not made known to the city, the bank had been advised by the guaranty company that it would not renew the bond for another year unless additional

securities were provided. This the bank not only failed to provide, but through its officers falsely represented to the city attorney and the city treasurer of Woodward that the surety bond had been renewed, that the premium for an extension had been paid, and they daily were awaiting the certificate extending said depository bond over to the next year. The representatives of the city again made inquiry, immediately prior to the 30th day of December, 1931, and were assured that the bond was all right. The bank was also advised that the money would be drawn out if the bank did not renew said bond or protect the city against loss on its deposit. The said securities held by said guaranty company, by stipulation of the parties, were deposited with the clerk of this court subject to final disposition by order of this court.

The city's contention is that said securities were placed with the surety company for the protection of the surety company and indirectly to secure the deposit of said city. In other words, instead of depositing said securities with the city to protect the city's deposit, said securities were deposited with the bonding company, which company executed its bond to the city. The false and fraudulent statements made by the officers of the bank to the representatives of the city induced the city to leave its deposit in the bank.

The court is not inclined to believe that the bank or the receiver thereof should be permitted to profit by the fraud and deception practiced by the officers of the bank upon the city. As to whether or not the city was protected, in accepting assets of the bank to secure the city's deposit, has been passed upon in another case, to wit, Haynes, Receiver, v. City of Woodward, 6 F. Supp. 270, this day decided by this court, and reference is made to said opinion on that question.

Particular reference is made to Fidelity & Deposit Company v. Kokrda (C. C. A.) 66 F.(2d) 641, 643, wherein the court says:

"The treasurer deposited the public moneys in the bank. It was the duty of the bank to give security therefor in accordance with the provisions of chapter 83, supra. This it undertook to do by pledging proper securities and depositing them with the surety company, instead of with an authorized bank. Under these circumstances we are of the opinion that the bank is bound by the pledge and cannot defeat it by setting up that it did not pledge the bonds in strict compliance with the statute. (Citing authorities.)

"Furthermore, the bank has not returned the deposit. When it received the deposit, it was its duty to secure the same in the manner provided in the statute. Under such circumstances it ought not to be permitted to recover the security without returning the deposit." (Citing authorities.)

In this case, the bank accepted the deposit of the city of Woodward, and, together with the surety company, guaranteed the safety thereof, and as a part of said guaranty transaction the bank placed the securities with the surety company.

Immediately prior to the expiration of the surety bond on December 30, 1931, the bank's assurance that the bond would be extended induced the city to leave its money in the bank; otherwise the city would have withdrawn the deposit from the bank.

The issue in this case, as contended by the receiver, is whether or not the assets were taken and transferred at a time when the First National Bank of Woodward was insolvent, or rather at a time when the officers, had they considered the situation, must have seen failure was inevitable. Under the evidence in this case, however, the court finds that these securities or assets in question were not in the possession of the bank and had not been for some years. In fact at the time the bond was given in December, 1929, these securities were in the possession of the surety company, and they were placed with the surety company for the purpose of protecting the city in this specific deposit. The securities, or substituted securities, remained with the surety company, and in December, 1930, the bond was extended until December 30, 1931, and, as hereinbefore stated, when the city, through its representatives, conferred with the president and the cashier of the bank between the 15th of December and the 30th of December, 1931, relative to the renewal of the bond, advising the bank that, unless the bond were renewed, the city would withdraw its deposit, which it had a perfect right to do. The officers of the city were not negligent in their duties except that they relied upon the statements of the officers of the bank as true. The securities so pledged with the surety company had already been taken out of the bank, were not in the assets of the bank, unless they could be construed to be so constructively after the 30th day of December, 1931.

The court does not understand that there was ever any transfer of the assets of the bank. The city merely contended that the assets should continue to be used for the purpose for which they were set apart two years prior thereto, to wit, the protection of said

deposit, and the bank then authorized the bonding company to deliver the pledged securities to the city.

■ It may be contended that these assets were not pledged to the city, that the city merely had a bond, and that these assets were pledged with the surety company to guarantee the surety company against loss and not to protect the city. The court, however, will look to the substance of the transaction rather than the form. These assets were pledged to protect this deposit, and they could have been pledged directly with the city under the statute, or in order to secure a bond to protect the city, they could have been pledged with a bonding company, which was done. The city therefore contends that, when the bond expired and the city had not withdrawn its deposit from the bank because of the false and fraudulent representations made by the officers of the bank, if the bonding company were to be relieved of its liability on the bond, the city should be protected, at least by having the same protection previously given the bonding company.

The bank has not suffered in this transaction, neither have the general depositors, for, if the bond had been renewed as stated by the bank, the bonding company would certainly have been entitled to hold these assets, and therefore, if the bank even had constructive possession of the assets so pledged, it was a constructive possession secured through fraud.

The bank was continued in operation until January 18, 1932. It may have been found by the examiner's report to be insolvent because of depreciation of assets and general economic conditions, but the evidence does not disclose that an act of insolvency had actually been committed.

■ In other words, the assets of the bank were deposited with the surety company for the purpose of securing the city in its deposit, and, upon the failure of the bank to secure an extension of the bond, the city became subrogated to whatever rights the bank had in the pledged securities; that is, the city was entitled to the bond or the securities. The bank cannot, even through the receiver, contend in equity and good conscience or in law that it is entitled to keep the deposit of the city and also the assets which it in good faith pledged to secure or induce the deposit.

■ The laws governing the operation and management of banks ought not to be construed to show a greater solicitude for the protection of general depositors in a bank than in the protection of trust funds of a municipality deposited with the bank, which in fact are the funds of the taxpayers, assessed and collected for a public purpose. The court feels that this deposit of the city was retained under such questionable representations by the officers of the bank as to impress upon such deposit a trust in favor of the city, and because thereof the city has a lien upon the assets of the bank pledged by the bank originally to secure this particular deposit.

Judgment should be entered for the defendants, the city and its defendant officers, for possession of said securities to the extent in value of the amount of the deposit. If there be any equity in the securities in question in excess of the amount of the deposit, said excess sum should be paid to the receiver. An exception is allowed the plaintiff. A form of judgment may be prepared and submitted consistent with this opinion.