**CAPITAL SAVINGS & LOAN ASS'N et al. v. OLYMPIA NAT. BANK et al.**

**No. 7854.**

Circuit Court of Appeals, Ninth Circuit.

Dec. 16, 1935.

Thos. L. O'Leary, of Olympia, Wash., and Guy E. Kelly, of Tacoma, Wash., for appellants.

James P. Neal, of Olympia, Wash., for appellees Olympia Nat. Bank and others.

G. W. Hamilton, Atty. Gen., and E. P. Donnelly, Asst. Atty. Gen. (Roberts & Skeel and Karr & Gregory, all of Seattle, Wash., of counsel), for appellee State of Washington.

Before WILBUR, GARRECHT, and MATHEWS, Circuit Judges.

GARRECHT, Circuit Judge.

The appellants brought a suit in equity against the appellees to recover collateral securities alleged to have been unlawfully pledged to the appellee state treasurer for the deposit of state funds in the appellee bank. In the alternative, the bill prayed for the recovery of the cash proceeds received by the state treasurer, in the event that the collateral securities had been sold by him. The appellants also asked for an injunction to restrain further payments of dividends by the appellee bank receiver to the state treasurer until the common creditors of the bank received dividends equal to those already paid to the state treasurer.

Succinctly stated, the allegations of the bill of complaint are as follows:

On January 22, 1932, the Comptroller of the Currency of the United States took over the affairs of the appellee bank for liquidation, and a receiver was appointed. The appellants were depositors in the bank, and brought the suit on behalf of themselves and other depositors similarly situated, as common creditors, whose deposits aggregate approximately $600,000.

On January 21, 1932, "and for some days prior thereto," the treasurer of the state of Washington had a credit balance in the appellee bank, which balance was created by the deposit of state funds. According to the bill of complaint, the approximate amount of that deposit was $690,758.45. To secure the payment of the deposit, the appellee bank delivered to the state treasurer certain securities having a book value of $538,825.47, and also caused to be delivered to the treasurer two surety company bonds aggregating $10,000, executed in favor of the state treasurer. Since the suspension of business by the bank, practically all of the securities have been sold by the state treasurer for approximately $503,762.93. According to the bill of complaint, both in its typed and printed form, there is left a balance due to the state treasurer of $186,505.70. This figure, however, is clearly erroneous, for if the other amounts given in the bill are correct, the balance due to the state treasurer should be $186,995.52, or the difference between $690,758.45, the amount of the deposit, and $503,762.93, the amount of cash received from the sale of the collateral securities. The discrepancy, however, is not material to the determination of this case.

The bill continues that on January 21, 1932, and during the entire period that the state treasurer made the deposits therein mentioned, the combined paid-up capital and surplus of the appellee bank did not exceed $175,000, and that at all times therein mentioned the state treasurer's deposit was in excess of the combined paid-up capital and surplus of the bank. It is further alleged that the state treasurer's deposit was at all times subject to the provisions of sections 5548–5561, inclusive, Remington's Revised Statutes of the State of Washington, and that all deposits made by the state treasurer in excess of the combined paid-up capital and surplus of the bank "and/or in excess of the prescribed percentages of securities on deposit with the State Treasurer" were unlawful.

It is also averred that notwithstanding the fact that the state treasurer's deposit was secured by collateral, a predecessor of the present appellee receiver of the bank paid the state treasurer a dividend of 18 per cent. on the latter's entire deposit of "$690,768.45 [sic]" [$690,758.45], such dividend, amounting to $124,336.52, having been paid on October 5, 1932; and that on April 24, 1934, the present receiver, one of the appellees herein, drew his check No. E-452920 in the sum of $62,169.18 in favor of the state treasurer, such amount being the entire balance on the latter's deposit. The bill sets forth that the dividend of $124,336.52 was paid and the check for $62,169.18 has been drawn in favor of the state treasurer, though not yet delivered to him, "upon the theory, as these plaintiffs are informed and verily believe, that the entire deposit of the state treasurer was a preferred claim and entitled to preference in payment over the general depositors of said bank."

The bill alleges, on information and belief, that the appellee receiver is about to pay the above-mentioned check to the state·treasurer, thereby paying the latter's deposit in full, and thereby creating a further and unlawful preference in favor of the state treasurer, etc.

The appellants aver that, as common creditors, they and all of the other general depositors represented by them have received only 27 per cent. of their respective claims against the bank, while the state treasurer will have received payment in full "of his secured claim as well as * * * 100% upon his unsecured claim," if the check above referred to is paid to him.

Alleging irreparable injury unless an injunction is granted, and averring that there is no adequate remedy at law, the appellants pray:

1. That an injunction, both preliminary and permanent, be issued against the receiver, enjoining him from delivering the check to the state treasurer.

2. That a decree be entered adjudging that all the state deposits in the appellee bank at the time it was closed "in excess of the amount lawfully deposited therein" constitute a common claim only,

564

in favor of the state; that all dividends heretofore received by the state in excess of what it was entitled as a common creditor of the bank be refunded by the state to the receiver or, in the alternative, that the state and its treasurer be decreed to receive no further dividends until the other common creditors of the bank receive dividends equal to .those already received by the state or its treasurer on its common claim.

3. That the pledge of all its assets by the bank to secure the state treasurer's deposit, of all sums in excess of the paid-up capital and surplus, be decreed unlawful, and that all such unlawful pledges of assets be ordered returned by the state treasurer to the receiver.

4. That in the event the state treasurer has converted any or all the assets thus unlawfully pledged with him into cash, the proceeds thereof be ordered to be forthwith paid over by the state treasurer to the receiver.

A demurrer, which by stipulation was treated as a motion to dismiss, was sustained by the lower court, on the ground that the bill did not state any facts sufficient to constitute a cause of action or to entitle the appellants to any equitable relief. From the order of dismissal, the present appeal is being prosecuted.

The appellee bank and the appellee receiver contend that the appellants, as creditors of the bank, were without authority to institute the present suit, for the reason that, "If any loss resulted to the bank, its stockholders, or its creditors, including the appellants, on account of the facts as set forth in the bill of complaint, such loss must be remedied through a suit instituted by the receiver." The same appellee also objects that the bill fails to allege that ' a demand had been made upon the Comptroller of the Currency and the receiver to bring the action, and that in the absence of such a showing the creditors cannot maintain this suit.

■■■ We cannot agree with this contention. The allegation in the bill that the receiver "is about to deliver and pay to the said state treasurer" the check in question, together with the statement that the receiver will do so "unless restrained by the order of this court," renders it unnecessary, we think, for the bill to contain the further averment that the re-

ceiver has been asked to bring this suit, and has refused.

It is well settled that the creditors of a national bank may bring suit against the receiver to prevent an illegal disposition of the institution's assets while it is in liquidation. Fifer v. Williams (C.C.A.9) 5 F.(2d) 286, 289; Gockstetter v. Williams (C.C.A.9) 9 F.(2d) 354, 355; Jackson v. McIntosh (C.C.A.5) 12 F.(2d) 676, 678, certiorari denied 273 U.S. 697, 47 S.Ct. 93, 71 L.Ed. 846; Wittnebel v. Loughman (D.C.) 9 F.Supp. 465, 467, 468.

In such a suit, it is "manifestly futile and unnecessary" to allege that a demand has been made upon the receiver to institute proceedings against himself. Brinckerhoff v. Bostwick, 88 N.Y. 52, 59, 60; Dawkins v. Mitchell, 149 La. 1038, 90 So. 396, 398.

Under the allegations of the bill, therefore, we think that the appellants had the capacity to institute and maintain the present suit.

In a memorandum decision, the court below held that it was not "necessary to determine the amount of the deposit [of the state treasurer] in excess of that authorized by the statutes of the state, for such laws were enacted for the security of the state and its officer, and plaintiffs [appellants] are not entitled to any advantage on their account."

While we believe that the proposition laid down by the District Judge is . correct, we prefer to rest our decision upon broader grounds, and consider the case on its merits.

In the first place, it will be necessary to inquire to what extent the appellants are entitled to invoke the statutes of the state of Washington relative to security for bank deposits of public funds.

As amended on June 25, 1930, 12 U.S.C.A. § 90 reads in part as follows: "Any [national banking] association may, upon the deposit with it of public money of a State or any political subdivision thereof, give security for the safe-keeping and prompt payment of the money so deposited, of the same kind as is authorized by the law of the State in which such association is located in the case of other banking institutions in the State."

Prior to the foregoing amendment, a national bank could not legally pledge assets to secure funds of a state, or of a

political subdivision thereof. Texas & Pacific Ry. Co. v. Pottorff, 291 U.S. 245, 258, 54 S.Ct. 416, 78 L.Ed. 777; City of Marion v. Sneeden, 291 U.S. 262, 268, 54 S.Ct. 421, 78 L.Ed. 787. "The plain purpose of the statute was to remove any doubt of the power of national banks to give security for public deposits, and in that respect to enable them to invite public deposits on an equal footing with state banks." Fidelity & Deposit Co. of Maryland v. Kokrda (C.C.A.10) 66 F.(2d) 641, 642; Kavanaugh v. Fash (C.C.A.10) 74 F.(2d) 435, 436. See, also, Lewis v. Fidelity & Deposit Co., 292 U.S. 559, 564, 54 S.Ct. 848, 78 L.Ed. 1425, 92 A.L.R. 794.

▮ Whatever may be the purpose of the state statutes, which we will consider hereafter, it is clear that the federal statute just quoted was enacted for the protection not of state officers but of national banks and their depositors. Although the federal statute to a limited extent adopts, by reference, state enactments as to pledges for state deposits, it must be borne in mind that, as the Supreme Court has pointed out, the authority for such pledging is derived primarily from federal law.

▮ Being in pari materia, and jointly constituting the authorization for a national bank to pledge its assets as security for the public deposits of a state, both federal and state legislation must be construed as a whole. The federal statute provides that such pledges may be given by a national bank in states that authorize their own banks to do so. City of Marion v. Sneeden, supra, 291 U.S. 262, at pages 268, 269, 54 S.Ct. 421, 78 L.Ed. 787. The state statute governs as to the kind of security that the national bank may pledge.

We turn now to a consideration of the state statutes dealing with the limitations upon the power of a bank to pledge its assets as security for a deposit of the public funds of the state.

Section 3261 of Remington's Revised Statutes of Washington reads in part as follows: "No bank or trust company shall pledge or hypothecate any of its securities to any depositor or creditor except that it may qualify as depositary for United States deposits, postal savings funds or other public funds deposited by any public officer by virtue of his office and may give such security for such deposits as are [sic] required by law or by the officer making the same: Provided, that any bank or trust company may borrow, for temporary purposes, not to exceed in the aggregate amount the paid-in capital and surplus thereof, and may pledge, as security therefor, assets of such corporation, not exceeding one and one-half times the amount borrowed."

It is clear that, so far as this section is concerned, a bank is authorized to give any security that may be required by the public officer making the deposit.

In 1907, the Legislature of the State of Washington enacted the following provision: "The State Treasurer may deposit with any depositary which has fully complied with all requirements of law any state moneys in his hands or under his official control not exceeding the limit herein prescribed, and any sum so on deposit shall be deemed to be in the State Treasury, and such Treasurer shall not be liable for any loss thereof resulting from the failure or default of any such depositary without fault or neglect on his part or on the part of his assistants or clerks. The amount at any time on deposit with any depositary shall not exceed the actual paid up capital and surplus, nor the penalty of the bond filed by it, nor three-fourths of the value of the bonds deposited by it, nor the amount prescribed by the State Board of Finance, if any be prescribed." Session Laws of 1907, c. 37, § 4, p. 51.

The foregoing section was carried verbatim into Remington's Compiled Statutes of Washington 1922, appearing as section 5551 in volume 2 of that compilation.

▮ In March, 1931, the State Legislature amended section 5551. The first sentence of the section, above quoted, remains unchanged; but the rest of the enactment now reads as follows: "The amount at any time on deposit with any depositary shall not exceed the actual paid-up capital and surplus, nor the penalty of the bond filed by it, nor ninety per cent of the value of the securities deposited by it, described in subdivision (1) of section 1 of this act, nor seventy-five per cent of the value of the securities described in subdivisions (2), (3), (4) and (5) of section 1 of this act, nor the amount prescribed by the state finance committee, if any be prescribed: Provided, however, That the aggregate amount of mon-

cy so on deposit at any time may equal ninety per cent of the value of the securities deposited described in subdivision (1) of section 1 of this act, and/or seventy-five per cent of the value of the securities deposited described in subdivisions (2), (3), (4) and (5) of section 1 of this act." Session Laws of 1931, c. 87, § 2, pp. 256, 257.

Section 1 of the act, referred to in the foregoing excerpt from section 2, is not material to the issues herein, save that it authorizes the deposit of certain securities in lieu of a bond. Section 1 was carried over into Remington's Revised Statutes of 1932 as section 5549, and section 2 was carried over as section 5551. The appellants, upon whom the burden rests of showing error on the part of the court below, concede that sections 5549 and 5551, as they now read, have not been construed by the Supreme Court of Washington; that their construction is before the federal court for the first time; and that the appellants have been unable to find any reported case "where the facts are even similar to those in the case at bar."

The controversy herein centers around the interpretation to be placed upon the proviso in section 5551.

The appellants contend that section 5551 should be construed as though it read as follows: "The amount of the deposit shall not exceed the actual paid-up capital and surplus; nor shall it exceed the penalty of the bond filed by it, nor shall it exceed ninety per cent of the value of the securities deposited by it, described in subdivision (1); nor shall it exceed seventy-five per cent of the value of the securities described in subdivisions (2), (3), (4), and (5); nor shall it exceed the amount prescribed by the state finance committee, if any be prescribed."

In other words, the appellants argue that the conditions set forth in section 5551 are cumulative and, in order that the deposit may be lawful, "each and all of said conditions must be fully complied with."

The appellee state of Washington, on the other hand, says: "This is not a proviso in the sense of a prohibition, but is an express authorization or an exception to the body of the statute, affirmatively granting to the public depositor the right to make deposits aggregating certain percentages of security held, * * *

regardless of other limitations, such as the amount of paid-up capital and surplus. No other interpretation of this proviso is possible, for, under the only other suggested interpretation, the proviso added nothing to the statute that it did not already contain. Also, it may be noted that there could be no purpose in restricting the state deposits to the bank's paid-up capital and surplus if the penalty of the bank's depositary bond or the value of the collaterals exceeded the capital and surplus, for the state would be adequately protected by such bond or collaterals."

In the first place, it is clear that the amendment to section 5551 contained in the state statute of 1931 was enacted for the protection of the state, and not for the benefit of banks, national or otherwise. The title of the amendatory act (Laws 1931, p. 255) reads in part as follows: "An Act relating to depositaries for public funds * * * of the state, counties, cities and towns; and *requiring of such depositaries* a surety bond, or in lieu thereof the deposit of certain securities," etc. (Italics our own.)

Section 5551 provides that if any depositary complies with all requirements of law, and if the state treasurer deposits with such depositary any state money not exceeding the limit prescribed by the amendatory statute, the public officer "shall not be liable (to) for any loss thereof," etc. In other words, the entire provision in question is not a restriction on a bank's capacity to receive deposits or to pledge its assets as security therefor, but is rather a limitation on the state treasurer, for the protection of the public funds. If he stays within such limitation, the state treasurer himself is in turn protected against personal liability. The express limitation on *banks* is found elsewhere, namely, in section 3261, which provides that no bank or trust company shall pledge or hypothecate any of its securities to any depositor, *except* that it may *qualify* as depositary for United States deposits, postal savings funds or other public funds deposited by any public officer, and may give such security as is required by law *or by such officer.*

We do not believe that it was the intention of the Legislature that, in case the state treasurer should deposit public funds in excess of any of the limits specified in section 5551, the state of Wash-

ington should lose such excess, or that the state should give up any securities pledged by the depository in excess of the bank's paid-up capital and surplus. The purpose of section 5551 is to protect the taxpayers' money, and not to sacrifice it because of technical violations of law on the part of the state treasurer.

The appellants insist that the proviso in section 5551 "should at most be construed as clarifying the immediately preceding portion of the section, which reads: 'Nor ninety per cent of the value of the securities deposited by it, described in subdivision (1) of Section 5549,' etc." Such a construction, of course, leaves unaffected by the proviso the limitation of the state treasurer's deposit to "the actual paid-up capital and surplus." That limitation, the appellants argue, should prevail in the instant case.

While the general rule as to provisos is as contended for by the appellants, that rule is hedged about by many qualifications. The exceptions have been recognized by the Supreme Court of Washington in at least two decisions—one of them very recent, and both of them apparently overlooked by counsel herein.

In Casco Co. v. City of Olympia, 124 Wash. 218, 222, 213 P. 915, 916, the court said: "The general rule that a proviso is deemed to apply only to the immediately preceding clauses or provisions in the section in which it is found is subject to many exceptions. It is always a question of legislative intent, and here we think it clearly appears from other provisions of the act from which the quoted section is taken that the legislative intent was to the contrary."

The Casco Case was quoted from with approval in Lakeside Country Day School v. King County, 179 Wash. 588, 592, 38 P.(2d) 264, decided on December 7, 1934.

The foregoing views accord with general law. In McDonald v. United States, 279 U.S. 12, 21, 22, 49 S.Ct. 218, 219, 73 L.Ed. 582, Mr. Justice Butler said: "But a proviso is not always limited in its effect to the part of the enactment with which it is immediately associated; it may apply generally to all cases within the meaning of the language used. [Cases cited.] *Little if any significance is to be given to the use of the word 'provided.'* In Acts of Congress, that word is employed for many purposes. [Case cited.] Sometimes it is used merely to safeguard against misinterpretation or to distinguish different paragraphs or sentences. [Case cited.] For the proper construction of the provision in question, consideration need not be limited to the subdivision in which it is found; the general purpose of the section may be taken into account. [Case cited.]" (Italics our own.)

See, also, Georgia R. & Banking Co. v. Smith, 128 U.S. 174, 181, 9 S.Ct. 47, 32 L.Ed. 377; Interstate Commerce Commission v. Baird, 194 U.S. 25, 37, 24 S.Ct. 563, 48 L.Ed. 860; United States v. Mullendore (C.C.A.8) 35 F.(2d) 78, 82; Castilo v. State Highway Commission, 312 Mo. 244, 279 S.W. 673, 678; 59 C.J. 1090, 1091.

Considering the applicable Washington statutes together, we are of the opinion that the proviso, even when viewed solely as a limitation upon the state treasurer, authorizes the deposit of public funds in any amount, so long as that amount equals 90 per cent. of certain securities pledged by the bank to protect the public deposit, and 75 per cent. of certain other securities, so pledged. We further believe that, when the conditions specified in the proviso are met, the terms of the proviso supersede the requirement that the state's deposit shall not exceed the actual paid-up capital and surplus.

Nor can the appellants complain that the state treasurer did not exact from the bank greater security, so that the state's deposit would be either 75 or 90 per cent. of the amount pledged. That provision, we repeat, is for the protection of the state and not of the bank; for if the state treasurer had exacted even more security than he in fact received, the assets of the bank would have been further depleted by that much, and the general creditors would be in a worse situation than they are now.

To summarize our views under this heading, therefore, we hold that the appellants are entitled to invoke the state statutes for the purpose of ascertaining whether *any* security for public deposits is permitted by state law, and, if so, what *kind,* but not for the purpose of questioning the size of the public deposit, or the *amount* of security given by the bank; for the provisions of state law as to amount of security or of public deposits are for the protection of the state and not of banks. In the instant case, the

"kind" of security given by the appellee bank has not been called into question. The appellants have no other legal grounds for complaint.

 Furthermore, where the public policy of a state favors the protection of public deposits by means of security to be given by depositaries, contracts for that purpose will be sustained, regardless of technical deficiencies.

In Texas & P. Ry. Co. v. Pottorff (C.C.A.5) 63 F.(2d) 1, 3, affirmed 291 U.S. 245, 54 S.Ct. 416, 78 L.Ed. 777, supra, the court said: "Cases, and these are supported, we think, by the better reasons, holding that, where the Legislature of a state has declared in specific statutes that deposits of public money must be secured this sufficiently indicates the public policy of the state toward the securing of public deposits, to sustain contracts whether in exact accordance with the statute or not, made in good faith for their security, are. [Many authorities cited.]"

Again, in Fidelity & Deposit Co. of Maryland v. Kokrda, supra, 66 F.(2d) 641, at page 643, we find the following language: "While there are decisions to the contrary, the rule supported by many well reasoned decisions is that where the legislature of a state has declared by express statutory enactment that deposits of public funds shall be secured, thereby indicating that the public policy of the state is not only to permit but to require the securing of such deposits, contracts to secure such deposits made in good faith should be sustained, although not entered into in exact accord with the statutory requirements."

 The appellants argue that in the instant case, the appellee state of Washington should not have received dividends upon the face of its claim against the appellee bank as it stood at the time the Comptroller of the Currency took over the management of the institution, but insist that the collateral securities or the proceeds therefrom should first have been credited against the entire claim.

We cannot agree with this contention. In Merrill v. National Bank of Jacksonville, 173 U.S. 131, 146, 19 S.Ct. 360, 366, 43 L.Ed. 640, Mr. Chief Justice Fuller said: "We repeat that it appears to us that the secured creditor is a creditor to the full amount due him when the insolvency is declared, just as much as the unsecured creditor is, and cannot be subjected to a different rule. And, as the basis on which all creditors are to draw dividends is the amount of their claims at the time of the declaration of insolvency, it necessarily results, for the purpose of fixing that basis, that it is immaterial what collateral any particular creditor may have. The secured creditor cannot be charged with the estimated value of the collateral, or be compelled to exhaust it before enforcing his direct remedies against the debtor, or to surrender it as a condition thereto, though the receiver may redeem or be subrogated as circumstances may require." See, also, Aldrich v. Chemical National Bank, 176 U.S. 618, 638, 639, 20 S.Ct. 498, 44 L.Ed. 611.

While pointing out that the rule as to secured creditors' dividends laid down by the Supreme Court of Washington is different from that which prevails in the federal courts, the appellants concede that the doctrine of the state courts is not controlling in the case at bar.

Accordingly, we find that the decree dismissing the complaint was proper.

Decree affirmed.