CITY OF MARION *v.* SNEEDEN, RECEIVER, ET AL.

No. 400.   Argued December 7, 8, 1933.—Decided February 5, 1934.

*Messrs. Richard Mayer* and *Henry F. Driemeyer,* with whom *Messrs. Carl Meyer, David F. Rosenthal, C. E.*

*Pope,* and *R. T. Cook* were on the brief, for petitioner. *Mr. William Cattron Rigby* also participated in the oral argument in behalf of petitioner.

*Messrs. Hosea V. Ferrell* and *John Hay,* with whom *Mr. Charles C. Murrah* was on the brief, for respondents.

By leave. of Court, briefs. of *amici curiae* were filed as follows: by Messrs. *William Cattron Rigby, Fred W. Llewellyn, Serafin P. Hilado,* and *Kyle Rucker,* on behalf of the Philippine Islands; Messrs. *William H. Sexton* and *Leon Hornstein,* on behalf of the City of Chicago; and *Mr. Leland K. Neeves.*

MR. JUSTICE BRANDEIS delivered the opinion of the Court.

The Act of June 25, 1930, c. 604, 46 Stat. 809, amends § 45 of the National Bank Act of 1864 [1] by adding thereto the following:

"Any association may, upon the deposit with it of public money of a State or any political subdivision thereof, give security for the safe-keeping and prompt payment of the money so deposited, of the same kind as is authorized by the law of the State in which such association is located in the case of other banking institutions in the State."

The controlling question is whether Illinois has conferred upon banks organized under its laws power to pledge assets as security for deposits of public moneys of political subdivisions of the State.

In 1931, the city of Marion, Illinois, was operating under the " Commission Form of Government." Cahill's 1931 Rev. Stat., Chap. 24. Pars. 323–384. That statute

---

[1] Act of June 3, 1864, c. 106, § 8, 13 Stat. 101; R.S. 5336; 12 U.S.C. § 24, Seventh.

required the treasurer of a city to give a bond; and to "make his daily deposits of such sums of money as shall be received by him from all sources of revenue whatsoever, to his credit, as treasurer of said city . . . in one or more banks to be selected by the president of said council, the commissioner of accounts and finance, and the treasurer of such city . . . or any two of them, and any such bank before any such deposit is made therein . . . shall also execute a good and sufficient bond with sureties to be approved by the president of said council and conditioned that such bank will safely keep and account for and pay over said money . . ." (Par. 374.)

Carroll having been appointed treasurer of Marion, applied to the Fidelity and Casualty Company of New York to become surety on his official bond. Although Marion has a population of 9,000, it was then without a bank. The Fidelity Company agreed to become surety on Carroll's bond provided he would get elsewhere a bank which would give satisfactory collateral security for the repayment of his deposits of the public moneys. The City National Bank of Herrin agreed to do this. Thereafter, it delivered to the Continental Illinois National Bank and Trust Company of Chicago, as escrow agent, negotiable bonds of the par value of $23,000, under an agreement so to secure the City's deposit; the Fidelity Company executed Carroll's official bond; and he made his initial deposit in the Herrin bank of the City's moneys. That bank was then solvent. On October 31, 1931, it failed and a receiver was appointed. At the time of the failure the City's deposit was $16,430.00.

Ben Sneeden, the receiver, brought, in the federal court for eastern Illinois, this suit against the City, its treasurer, the surety and the escrow agent. Setting forth the above facts, he prayed that the pledge be declared *ultra vires* and void; that the bonds be delivered to him as receiver; and that, meanwhile, the defendants be enjoined from dis-

posing of them. The District Court dismissed the bill. 58 F. (2d) 341. Its decree was reversed by the Circuit Court of Appeals, one judge dissenting. 64 F. (2d) 721. This Court granted certiorari.

The petitioners contend that the pledge is valid because the Act of 1864, as originally enacted, conferred upon national banks, as a necessary incident of the business of deposit banking, the power to pledge assets to secure deposits; and that the amendment of June 25, 1930, did not limit the power so originally conferred. They contend further that even if the 1930 amendment be construed as denying to a national bank power to make such a pledge unless it is located in a State which grants the power to its state banks, the pledge here challenged is valid, because in Illinois, state banks have the power to pledge assets as security for deposits of public moneys of any political subdivision of the state. The petitioners contend also that even if the pledge was without authority in law, the bill was properly dismissed by the District Court, because the bank could not have required return of the bonds without repaying the deposit and that it would be inequitable to permit the receiver to do so. We think these contentions are unsound.

*First.* For the reasons stated in *Texas & Pacific Ry. Co. v. Pottorff*, decided this day, *ante*, p. 245, we are of opinion that the Act of 1864 did not confer the power to pledge assets to secure any public deposits except those made under § 45 by the Secretary of the Treasury of the United States. The power conferred by each later act, except that of 1930, was limited to securing specific federal funds.[2] A national bank could not legally pledge assets to secure funds of a State, or of a political subdivision thereof, prior to the 1930 amendment; and since then it

---

[2] See *Texas & Pacific Ry.* v. *Pottorff, ante*, p. 245, note 11.

can do so legally only if it is located in a State in which state banks are so authorized. In some States national banks had, prior to the 1930 amendment, frequently pledged assets to secure public deposits of the State or of a political subdivision thereof; comptrollers of the currency knew that this was being done; and they assumed that the banks had the power so to do. But the assumption was erroneous. The contention that such power is generally necessary in the business of deposit banking has not been sustained.

*Second.* Banks organized under the laws of Illinois do not appear to possess the power of pledging assets to secure the deposit of public moneys of a political subdivision of the State. Illinois corporations have only such powers as are conferred by statute either expressly or by implication; and only those powers are conferred by implication which are reasonably necessary to carry out the powers expressly granted, *People* v. *Chicago Gas Trust Co.,* 130 Ill. 268; 22 N.E. 798; *Calumet Dock Co.* v. *Conkling,* 273 Ill. 318; 112 N.E. 982. No Illinois statute confers in express terms upon banks organized under its laws either the general power to pledge assets to secure a deposit; or the general power to pledge assets to secure public deposits. A statute confers in terms the power to pledge assets to secure deposits of the State but there is none which so confers the power to pledge assets to secure public deposits of a political subdivision of the State.[3] No

---

[3] In the Banking Act of 1919, Cahill's 1931 Ill. Rev. Stats., c. 16a, Par. 1, which, reënacting the law of 1887, provides for the organization of banks "for the purpose of . . . deposit" there is complete silence on this subject. The only references in any Illinois statute concerning the pledge of assets to secure a deposit are the following:

(a) Section 10 of the State Depositary Act of 1919 (Cahill's 1931 Ill. Rev. Stat., c. 130, Par. 29) provides: "No moneys in the State Treasury shall be deposited in any bank approved as a depositary

reported decision rendered by any Illinois court since the enactment of the General Banking Law of 1887 holds that the alleged power exists as one incidental to the business of deposit banking. Nor is there any evidence that in Illinois such power is necessary in the conduct of the business of deposit banking.

*Ward* v. *Johnson*, 95 Ill. 215, 217, decided in 1880, is relied upon as authority for the proposition that Illinois banks have power to pledge assets to secure deposits. That case arose under the charter of " The Merchants, Farmers and Mechanics Savings Bank," which was granted long before the General Banking Act of 1887. The pledge involved therein was given to secure a transaction which appears to have been a loan as distinguished from a deposit. The transaction dealt with private funds. The statement was there made that banks have authority to pledge assets to secure deposits. If that statement expresses the law of the State, Illinois banks have had for more than half a century power to pledge their assets to secure private deposits as well as deposits of public moneys of its political subdivisions. But the case has never been referred to since on this point in any reported opinion of any Illinois court.[4] During that period, many state

---

under the terms of this Act until such bank shall have deposited security with the State Treasurer equal in market value to the amount of moneys deposited.

(b) Section 11 of the Banking Act as amended in 1929 (Cahill's 1931 Ill. Rev. Stat., c. 16a, par. 11) provides that a receiver of a closed bank:

" Shall deposit daily all moneys collected by him in any state or national bank selected by the auditor, who shall require of such depository satisfactory securities or satisfactory surety bond for the safe keeping and prompt payment of the money so deposited."

[4] Courts of other States have referred to it as authority for the proposition that banks have the power to pledge assets to secure deposits. See *Williams* v. *Earhart*, 34 Ariz. 565; 273 Pac. 728; *First*

banks have failed;[5] and there must have been much litigation arising therefrom; but no exertion of the alleged power on the part of any state bank has been shown.

An authoritative determination of the question whether Illinois banks have power to pledge assets to secure the deposit of public moneys of a political subdivision of the State can be given only by its highest court. The District Court discussed, but did not decide, that question. Its decision dismissing the bill was rested on the ground that the National Bank Act as enacted in 1864 had conferred the general power to pledge assets to secure deposits; and that the power so granted had not been lessened by the later legislation. The majority of the Circuit Court of Appeals being of opinion that national banks lacked the power to pledge assets to secure deposits (except so far as conferred by the 1930 amendment) necessarily passed upon the applicable Illinois law. After careful consideration, it reached the conclusion that Illinois had not conferred upon its banks the power to pledge assets to secure deposits of political subdivisions of the State. Its reasons are set forth fully and persuasively; and the decisions of the courts of other States

*Amer. Bank & T. Co.* v. *Palm Beach,* 96 Fla. 247; 117 So. 900; *U.S. Fidelity Co.* v. *Bassfield,* 148 Miss. 109; 114 So. 26; *Melaven* v. *Hunker,* 35 N.M. 408; 299 Pac. 1075; *Page Trust Co.* v. *Rose,* 192 N.C. 673; 135 S.E. 795; *Cameron* v. *Christy,* 286 Pa. St. 405; 133 Atl. 551; *Grigsby* v. *People's Bank,* 158 Tenn. 182; 11 S.W. (2d) 673; *Pixton* v. *Perry,* 72 Utah 129; 269 Pac. 144.

[5] The Auditor of Public Accounts in his annual statement on the condition of state banks (p. 42) gives (Dec. 31, 1932) 1,866 as the aggregate number of the banks existing on Dec. 6, 1888 and organized since. Of these 26 had charters granted prior to Dec. 6, 1888; and 1,840 were organized thereafter under the general law. The number of banks in operation Dec. 31, 1932 was 742. The number then in receivership was 444. Between Dec. 31, 1932 and March 1, 1933, 32 more state banks failed. Federal Reserve Bulletin, 1933, pp. 105, 201.

involving similar questions are fully reviewed. We cannot say that the Circuit Court erred in the conclusion reached.

*Third.* Since the Herrin bank was without power to make the pledge of bonds here in question, its receiver is entitled to recover them unconditionally in order that they may be administered for the benefit of the general creditors of the bank. See *Texas & Pacific Ry. Co.* v. *Pottorff, ante,* p. 245.

*Affirmed.*