## ECKERSON v. UTTER, District Court Clerk.
### No. 1808.

District Court, D. Idaho, S. D.
May 30, 1934.

William Healy, of Spokane, Wash., for plaintiff.

Frank T. Wyman, of Boise, Idaho, for defendant.

Richards & Haga, of Boise, Idaho, for intervener Community Hotel Co.

Edwin Snow and Maurice H. Greene, both of Boise, Idaho, for intervener First Nat. Bank of Idaho.

James F. Ailshie, Jr., of Boise, Idaho, for petitioner Ralph Falk.

CAVANAH, District Judge.

The plaintiff, as receiver of the Boise City National Bank, brings this action against the defendant to recover possession of certain

bonds alleged to have been pledged to the defendant by the bank as security for deposits made in the bank, and to enjoin the transfer and disposal of them.

On July 31, 1932, by order of its board of directors, the bank was closed and the Comptroller of the Currency took charge of its affairs. The defendant is a clerk of the state district court and ex officio auditor of Ada county, and while as such clerk deposited in the bank moneys paid to him which were carried in the name of "Stephen Utter, Clerk of the District Court." These moneys were amounts paid to the clerk by persons as fees, costs, alimony, awards, and as cash bonds in civil cases pending in the state district court.

About September 26, 1931, the bank and the defendant orally agreed that the bank would secure all deposits made or to be made by the defendant by pledging the bonds and assets in controversy, and thereafter, about November 20, 1931, by order of its board of directors, authorized and instructed its cashier to deliver to the defendant the bonds in question for the purpose of securing such deposits. At the time the bank closed there was on deposit therein in the account of the defendant the sum of $18,968.52, of which $7,074.17 was paid to the defendant by the petitioner, the Boise Community Hotel Company, in the case of Boise Community Hotel Company v. Cramer et al., and the sum of $9,652.61 paid to him by the petitioner First National Bank of Idaho, in the case of First National Bank of Idaho v. Ball et al., as awards, and the sum of $2,241.74 as alimony and costs and fees in other cases.

The validity of the agreement under which the bonds were pledged to the defendant is challenged, as it is urged that national banks lack power to pledge their assets to secure deposits, and therefore the pledge was ultra vires and void.

At the threshold there is a controversy as to the jurisdiction of the court for solution. The defendant and petitioners, the First National Bank of Idaho, Ralph Falk, and the Boise Community Hotel Company, assert that as the moneys deposited by the clerk in the bank were funds paid to him as clerk by the petitioners as awards, and as fees, costs, and alimony paid by others, in cases pending in the state district court prior to the bringing of the present action, and that the bonds pledged by the bank as security were matters over which the state court has first acquired jurisdiction in the cases therein pending, the federal court should therefore decline jurisdiction of the subject-matter involved. In opposition the receiver urges that the sub-ject-matter of the present action and those pending in the state court is not the same and does not establish exclusive jurisdiction of the state court, as the present action involves the sole question of the right of the clerk to hold the bonds as security which is a matter between him and the bank, while in the suits in the state court the matters involved are not the pledging by the bank of the securities or whether the parties had any right to enforce the pledge. If the view of the receiver is accepted we must go further, as the court would have jurisdiction to determine the question as to whether the bank was authorized to pledge assets to secure the deposits.

It is important to bear in mind that the question in the present case is the right to the possession of the bonds pledged by the bank as security and restraining the transfer and disposal of them. That is the only relief prayed for in the bill. Then have the bonds been seized and taken into the jurisdiction of the state court in the actions pending there so that they are withdrawn from the judicial power of the federal court to take them into its possession? The nature of the actions pending in the state court is the disposition of moneys paid into that court by litigants which are held by the clerk under orders of the court. Those funds, no doubt, are in the custody and possession of that court wherever they may be. The bonds pledged as securities are held by the defendant. And it is that situation to which we must address ourselves and to which the decision of the court is confined.

The determination of the question of jurisdiction requires first a disposal of the principal question as to the power of a national bank to pledge assets to secure deposits and the nature of such deposits, for if the bank did not have legal authority to pledge assets, which are the subject-matter of the present controversy, then the bonds pledged were never legally out of its possession and could have no relation to the deposits and could not be drawn into the custody or possession of the state court in the actions there pending which involve solely a controversy as between the litigants in those actions over the money deposited in the cases. It is therefore apparent that the issues are different in the actions in the state court from the one involved here, and the subject-matter is not identical. Under such circumstances there would be no infringement of the jurisdiction requiring the invoking of the rule that the court having first acquired jurisdiction should retain it to the exclusion of all others.

 A national bank prior to the 1930

amendment could not legally pledge assets to secure funds of a state or of a political subdivision thereof, and since then it can do so only if it is located in a state in which state banks are so authorized. The amendment of 1930 (12 USCA § 90), which provides, "Any association may, upon the deposit with it of public money of a State or any political subdivision thereof, give security for the safekeeping and prompt payment of the money so deposited, of the same kind as is authorized by the law of the State in which such association is located in the case of other banking institutions in the State," limits the power of national banks to pledge assets to secure deposits "of public money of a State or any political subdivision thereof * * * as is authorized by the law of the State in which such association is located in the case of other banking institutions in the State." This is the recent interpretation of the National Banking Act by the Supreme Court in the recent cases decided of City of Marion v. Sneeden, Receiver, et al., 291 U. S. 262, 54 S. Ct. 421, 423, 78 L. Ed. 787, and Texas & Pacific Railway Co. v. Pottorff, Receiver, 291 U. S. 245, 54 S. Ct. 416, 78 L. Ed. 777, and the pledging of assets of a national bank other than is authorized in the amendment is held to be ultra vires and void, and "its receiver is entitled to recover them unconditionally in order that they may be administered for the benefit of the general creditors of the bank." City of Marion v. Sneeden, supra. With the 1930 amendment and the interpretation placed on it by the Supreme Court in mind, we must refer to the laws of Idaho to ascertain if state banks are given power to pledge their assets to secure the deposits of public moneys of the state or of any political subdivision thereof. Idaho state banks are possessed with the power of pledging assets to secure "any deposits of moneys of the United States and public funds deposited in accordance with the provisions of any depository act of this state," as section 25-705 of I. C. A. provides: *"Giving security for deposit prohibited.*—It shall be unlawful for any bank to pledge, mortgage or hypothecate to any depositor any of its real or personal property as security for any deposit and any pledge, mortgage or hypothecation made in violation thereof shall be unenforceable and void and any person, firm or corporation, holding or receiving any security or securities mortgaged or hypothecated, pledged or attempted to be pledged, shall, upon demand of any officer, director or stockholder of the bank or the department of finance of the state of Idaho, be required forthwith to make return thereof, and the re-

payment of any deposit shall not be prerequisite to the recovery of any property so unlawfully pledged, hypothecated or mortgaged; provided, however, that this provision shall not apply to any deposits of the commissioner of finance as in this act provided for or to any deposits of moneys of the United States and public funds deposited in accordance with the provisions of any depository act of this state, or the United States, or to any deposits of any bursar of any state educational institution or any state officer or any employee of the state of Idaho or of any of its boards, or officers, of moneys held incident to the duties of any such bursar, board, officer, or employee."

It will be observed that the statute prohibits the pledging of assets of a state bank as security for any deposit except deposits made (a) by the commissioner of finance, (b) by the United States, (c) of public funds deposited in accordance with the provisions of any depository act of the state or the United States, and (d) by any bursar of any state educational institution or any state officer or any employee of the state or of any of its boards or officers. It is exception (c) "deposits of public funds in accordance with the provisions of any depository act of this state," relied upon by the defendant as authorizing state banks to pledge assets to secure deposits, which requires the consideration of the provisions of the depository law of the state, for to constitute "public funds" they must be such as are recognized by the state depository law, which provides: *"Depositing unit.*—Every municipal and quasi municipal corporation and improvement district and school district, of every kind, character or class, now or hereafter created or organized, and authorized by law to levy taxes or special assessments, for which the county treasurer does not act as treasurer, and every county, is a depositing unit: provided, that as to any such depositing unit as herein defined the moneys of which may at any time be in the custody, charge or possession of any county treasurer or tax collector, the county shall be deemed to be the depositing unit with respect to such moneys while the same so remain in such custody, charge or possession, and also of all moneys in the custody, charge or possession, of any county treasurer or tax collector for the credit of any school district or other political subdivision of a county authorized by law to levy taxes or special assessments and not herein defined as a 'depositing unit.' " Section 55-104, I. C. A.

Section 55-105, I. C. A., defines public moneys as "all moneys coming into the hands

of any treasurer of a depositing unit," and section 55-107, I. C. A., defines the treasurer as "the official custodian of public moneys as defined in this chapter."

The character of the funds deposited in the bank by the defendant were moneys belonging to litigants, and did not belong to the state or any political subdivision thereof, excepting the amounts representing costs and fees going to the county which belong to the county. Those moneys belonging to the litigants were private funds; especially is that true when we apply the provision of the state statute defining what are "public moneys." The Supreme Court of the state has often defined under the state statute what are "public moneys," and held that the policy of the state to be opposed to the pledging of bank assets as security for deposits, except where specifically authorized by the statute, and the pledging of such assets are void. Porter v. Canyon County Farmers' Mutual Fire Insurance Company, 45 Idaho, 522, 263 P. 632.

White v. Pioneer Bank & Trust Co., 50 Idaho, 589, 298 P. 933, and In re Bank of Nampa, 29 Idaho, 166, 157 P. 1117, are relied upon as authority for the proposition that the deposits made by the defendant were public moneys. The White Case arose under a statute charging the county assessor with the duty of accepting automobile licenses as agent of the state department of law enforcement, and the court there held that the money so collected by the assessor became public moneys the instant they were collected by the assessor, a public officer of the state. Those moneys belonged to the state and were within the general definition of public moneys. The case In re Bank of Nampa involved the question of whether public funds unlawfully placed on general deposit in a bank are recoverable as trust funds which the court held could be done. In both of these cases the funds involved were moneys belonging to the state and county and were clearly under the statute public moneys.

Whether Idaho banks are given authority to pledge assets to secure deposits of public moneys of a political subdivision under the laws of the state must be determined by its highest court.

The moneys deposited in the bank by the defendant, excepting the amounts covering fees and costs paid in the cases, are not public moneys of the state or any political subdivision thereof, and the bonds pledged by the bank as security for such deposits, excepting for such fees and costs, being unauthorized under both the federal and state laws, the possession of them by the defendant is illegal. The fact that the defendant is clerk of the state district court does not signify that securities held by him illegally are in the custody and possession of the court which would in the first instance give jurisdiction to the state court over them, as "to give the court claiming such custody jurisdiction, there must be a valid seizure and actual control of the res under the process." Fountain v. 624 Pieces of Timber (D. C.) 140 F. 381, 382. The res of the present action is not the moneys deposited in the state court by private litigants and which is the sole matter involved in the actions there pending, but is nothing more than the bonds which were illegally delivered to the defendant by the bank, and the determination of the legality of the possession of them by the clerk is not involved in the pending actions in the state court, for as yet the only matters and questions for determination by the state court are the rights of the litigants to the moneys so deposited with the clerk as awards and alimony. The state court has not yet been called upon in any proceeding to determine the legality of the possession of the bonds by the clerk. But it is earnestly urged that the defendant as clerk of the state court received the bonds and holds them in his possession in his official capacity, and the federal court should not pass upon the legality of the acts of an officer of the state court as that court has the first and paramount right to determine the legality of the acts of its officers concerning pending litigation before it. In advancing this contention a confusion exists as where an officer of a court performs an act under an order of, or process issued out of, the court, with where he acts without any order or process of the court in matters which are not pending in the court and which the court has no knowledge of, for the receiving of these securities illegally was an act that pertained to him and his official bondsmen. The illustration advanced that where an officer acts under a writ of attachment or replevin would seem not applicable, because the officer acting under writs of attachment and replevin, which are processes issued out of the court, brings into the custody of the court the property attached by him or taken in replevin. Here we do not have such a situation, for the custody of the bonds or the right to the possession of them by the clerk to secure himself in handling the funds of litigants is not yet before the state court. We must not forget that when in applying the rule, "that where the same matter is brought before courts of concurrent jurisdiction, the one first obtaining jurisdiction will retain it

until the controversy is determined, to the entire exclusion of the other," the subject matter involved must be the same. Russell v. Detrick (C. C. A. 9) 23 F.(2d) 175. The Russell Case is relied upon as denying jurisdiction to the federal court in the present case, which was a suit brought in the federal court to enjoin the defendants, who were plaintiffs in certain actions pending in the state court, from taking any steps in proceedings looking to the cancellation of notes or trust deeds, and sought to enjoin the state treasurer from surrendering any of them held as securities. The purpose of the suits in the state court was to cancel securities held by the insurance company, and which presented controversies wholly between the plaintiffs therein, who were makers of the instruments, and the defendants therein. The cases are distinguishable from the present case as the controversy in the cases are over different properties. We must first inquire if the matter involved in the actions pending in the courts are the same and not that the same matter could be brought before the courts of concurrent jurisdiction, or that the party acting might be an officer of a court. The Russell Case does not uphold the contention of the defendant and petitioners, for the controversy in both courts there was over the same property, and the court held that as the suit in the federal court not being one that disturbed the custody of property of which the state court had acquired jurisdiction, the federal court had no right to abdicate its own jurisdiction. The present suit is not confined in its operations to instances where it and the suits pending in the state court are substantially the same, there is no substantial identity in the interests represented or in the rights asserted and in the purposes sought for as has been said the present action involves the power of a national bank to pledge assets to secure deposits made by the defendant clerk, while the suits pending in the state court involve the interests and rights of certain litigants as to funds deposited by them with the clerk. The application of section 265 of the federal Judicial Code (28 USCA § 379) which relates to prohibiting the issuance of a writ of injunction by any court of the United States to stay proceedings in any court of a state, except in bankruptcy cases, is not tenable here, for there is no attempt in the present action to stay any proceeding in a state court, as the actions pending there involve entirely different matters than are involved here, and no decree here entered would restrain the state court from proceeding in the cases there pending or have that effect, for the state court, as has been said, has not yet in those cases been called upon to determine the right of the clerk to apply the bonds which he holds for his protection no more than has that court been called upon to require his bondsmen to respond in making good any of such funds deposited with him. The litigants have not yet reached that situation.

The federal court, under the record and the National Banking Act, having jurisdiction to determine the validity of the pledge, Studebaker Corporation of America v. First National Bank of Florence, S. C., et al. (D. C.) 10 F.(2d) 590, and the pledge having failed because of illegality, the receiver is entitled to recover the bonds prayed for, with costs, excepting a sufficient amount of the bonds given as security to cover the amounts of costs and fees which are, under the views expressed, "public moneys" paid to him and deposited with the bank.