**EVANS et al. v. NEW HAVEN BANK, N. B. A. (WHEELER, Intervener).**

No. 457.

Circuit Court of Appeals, Second Circuit.

Aug. 10, 1934.

Stoddard, Goodhart, Wetzler & Persky, of New Haven, Conn. (S. Frederick Wetzler and Donald E. Cobey, both of New Haven, Conn., of counsel), for James E. Wheeler, receiver of Mechanics' Bank, intervener-appellant.

Parmelee & Thompson, of New Haven, Conn. (Henry F. Parmelee, of New Haven, Conn., of counsel), for complainants-appellees.

Warren B. Burrows, Atty. Gen., Ernest L. Averill, Dep. Atty. Gen., and H. Roger Jones, Asst. Atty. Gen., amici curiæ.

Before MANTON, AUGUSTUS N. HAND, and CHASE, Circuit Judges.

AUGUSTUS N. HAND, Circuit Judge.

This appeal involves the right of the receiver of the Mechanics' Bank, a corporation organized under the laws of the state of Connecticut, to certain United States bonds deposited by it with the New Haven Bank, N. B. A., in order that it might qualify as a depository for funds of bankruptcy estates. The Mechanics' Bank, having become insolvent, complainants, trustees in bankruptcy of various estates, who have opened accounts with it, seek to reach and apply the bonds in satisfaction of their claims. The intervener, James E. Wheeler, as receiver of the Mechanics' Bank, prays that the bonds should be turned over to him and that the complainants should be limited to their ratable share of all the assets in his hands, on the ground that the pledge was ultra vires. Judge Hincks held the pledge lawful and dismissed the bill of the receiver of the Mechanics' Bank.

In February, 1932, the judges of the District Court made an order requiring banks in New Haven wishing to act as depositories of the funds of bankrupts to furnish bonds in the amount of $25,000. In pursuance of this requirement the Mechanics' Bank deposited with the New Haven Bank, N. B. A., Liberty bonds to the par value of $25,000 under a written agreement for the performance by said Mechanics' Bank "of all its obligations and duties as such depository. * * *"

This agreement was approved by Judge Hincks. On June 8, 1932, the Mechanics' Bank was duly closed by order of the bank commissioner of the state of Connecticut, and thereafter James E. Wheeler was appointed receiver by the superior court for New Haven county. At that time the total of the bankruptcy deposits was $50,436.17. The complainants filed the present bill on behalf of themselves as trustees in bankruptcy and others similarly situated to seize and realize upon the pledged Liberty bonds.

There is no doubt that the Mechanics' Bank received the deposits made by trustees in bankruptcy as general, and not as special deposits, and the only question is whether the bank had the right to secure them by the bonds placed with the New Haven Bank under the order of the court.

Section 61 of the Bankruptcy Act (11 USCA § 101) requires courts of bankruptcy to designate banking institutions as depositories for the money of bankrupt estates and to require bonds to be given by them to the United States. It is provided by Act Feb. 26, 1926, § 1126, 44 Stat. 122 (6 USCA § 15 note), that in lieu of such bonds, with appropriate sureties, bonds of the United States in a like amount may be deposited under an appropriate agreement. It is therefore plain that, if the Mechanics' Bank was to receive deposits of bankrupt estates and to do business with such estates in competition with national banks which under the present statute may secure such deposits, it was for business reasons obliged to accept the deposits here on the terms it agreed to.

Under Gen. St. Conn. 1930, § 3885, as amended (Gen. St. Supp. Conn. 1933, § 978 b), a state bank "may transact a general banking business and receive on deposit, or for safe-keeping or otherwise, all kinds of personal property, including money, papers, documents and evidences of debt, on such terms and conditions as may be agreed upon. Any such corporation may receive on deposit public funds or money held in a fiduciary capacity; may act as a depository of court and trust funds and may act as guardian, conservator, trustee, receiver, executor or administrator of the estate of any person, but not of the person of any ward, without bond, unless a bond shall be ordered by the court, but the capital stock and assets of such corporation shall be held as security for the faithful performance of its duties under such appointment. * * *"

█ Judge Hincks apparently thought that the provision that a bank might receive money on deposit "on such terms and conditions as may be agreed upon" was all-inclusive, although he also put his decision on broader grounds. But, if "terms" which may be "agreed-upon" be limited to such as may not offend sound public policy, there would still seem to be plenty of room for an agreement pledging bank assets to safeguard the deposits of trustees in bankruptcy. Congress has declared a general public policy in respect to securing bankruptcy funds. It is applicable to national banks in spite of the fact that they cannot pledge their assets for the benefit of ordinary private depositors. Texas & Pacific Ry. Co. v. Pottorff, 291 U. S. 245, 257, 54 S. Ct. 416, 78 L. Ed. 777. Whatever may be the limitations of the power of Connecticut banks to receive deposits "on such terms * * * as may be agreed upon," the clause seems to us broad enough to cover a pledge of assets required by the bankruptcy law and given in order that a state bank may accept trustees' accounts and compete with national banks in obtaining them. The law of Connecticut, of course, determines the powers of the Mechanics' Bank, but the clause allowing banks of that state to agree with its depositors as to the terms of their deposits should be read in the light of other banking powers and practices, and as so read we can feel no doubt that the agreement here was not ultra vires.

█ In Texas & Pacific Ry. Co. v. Pottorff, 291 U. S. 245, 54 S. Ct. 416, 418, 78 L. Ed. 777, and City of Marion v. Sneeden, 291 U. S. 262, 54 S. Ct. 421, 78 L. Ed. 787, it was held that neither private nor public funds deposited in a national bank could be secured by a pledge of its assets unless by virtue of special statutory provisions such as were recognized in Lewis v. Fidelity & Deposit Co. of Maryland, 292 U. S. 559, 54 S. Ct. 848, 78 L. Ed. 1425. One of the chief grounds for this ruling was that such a pledge would "withdraw for the benefit of one depositor part of the fund to which all look for protection." That this objection is not universally prohibitive is evident in the case of national banks because of the exceptions permitted for deposits of trustees in bankruptcy already mentioned and certain other federal deposits specifically provided for by acts of Congress. These exceptions were further enlarged by the Act of June 25, 1930, c. 604, 46 Stat. 809 (12 USCA § 90), so as to include public moneys of a state or subdivision thereof where a pledge of bank assets is authorized by the law of the state in which the national bank is located. In those cases pledges of the assets of national banks are

permitted in spite of the provision of the National Bank Act for marshaling the assets of insolvent institutes. We think a similar privilege exists here because of the powers given Connecticut banks under section 3885 of the General Statutes 1930 and that the marshaling statute of that state was not intended to prevent it. That statute (section 3935, Gen. St. 1930) provides that:

"The avails of the property of any bank *      *  in the hands of a receiver  *  *  * shall be appropriated ratably to the payment of: (1) The charges and expenses of settling its affairs: (2) the circulating notes, if any; (3) all deposits; (4) all sums which have been subscribed and paid in for its stock by the state or the school fund; (5) all other liabilities; and the surplus shall be distributed among the stock holders."

The "avails" referred to in the statute are the proceeds of property after liens have been satisfied and all securities subject to liens have been used for that purpose. The marshaling statute, therefore, does not stand in the way of our conclusion and cannot be thought to prevent the making of an agreement to pledge assets to secure bankrupt estates such as is provided for in Gen. St. § 3885, supra.

■ It cannot fairly be thought that there is the same objection to securing bankrupt estates by pledging bank assets which would exist were ordinary customers to have that privilege. In the latter case there would be danger of all kinds of favoritism of friends and relatives and influential depositors that would not exist in the former. Congress has seen fit to exempt bankrupt estates, various federal deposits, and the public moneys of states and their political subdivisions from the rigorous general rule laid down for national banks in Texas & Pacific Ry. Co. v. Pottorff, 291 U. S. 245, 54 S. Ct. 416, 78 L. Ed. 777, and City of Marion v. Sneeden, 291 U. S. 262, 54 S. Ct. 421, 78 L. Ed. 787. See Lewis v. Fidelity & Deposit Co. of Maryland, 292 U. S. 559, 54 S. Ct. 848, 78 L. Ed. 1425. The broad language in Gen. St. § 3885, read in the light of reasonable public policy, indicates that the Connecticut Legislature has done the same thing. Under these circumstances we think there can be no justification for preventing the pledging of bank assets to secure the accounts of trustees in bankruptcy. Though, strictissimi juris, they are private funds, their administration is subject to judicial control, and they closely resemble public or court funds when the question of the desirability of securing them arises.

■ It is argued that the decree so far as it dismissed the bill of intervention was final as to the appellant and was appealable because the receiver of the Mechanics' Bank specifically only prayed in his bill that the pledge be declared invalid and that he be held entitled to the immediate possession of the bonds. If he had no interest in the suit other than the recovery of the bonds, perhaps an appeal from the dismissal of the bill would lie. Hill v. Chicago & Evanston Railroad Co., 140 U. S. 52, 11 S. Ct. 690, 35 L. Ed. 331; Curtis v. Connly (C. C. A.) 264 F. 650, affirmed 257 U. S. 260, 42 S. Ct. 100, 66 L. Ed. 222. But the bill asked for "other and further relief," and, even if the deposit was held valid so that the receiver was not entitled to the bonds, he was nevertheless interested in any balance that might remain after their proceeds had been applied in satisfaction of the claims of the trustees in bankruptcy and, in being heard as to the amounts which might be allowed for the expenses of the suit and the charges of the depository, the New Haven Bank, which would affect that balance. Moreover, even if there was no balance to pass to the receiver, the amount to be applied upon the claims of the depositors would affect their claims against the estate in his hands. Therefore the decree which left both the amount of the various claims and the balance due the receiver undetermined was an incomplete disposition of the matters before the court which affected the appellant. Indeed he has appealed from the decree as a whole and has argued against the form of the provisions thereof which relate to the ascertainment of the claims provable against his estate.

■ Some of the provisions of subdivision 3 of the decree are criticised as requiring an improper mode of marshaling and as not in accord with the opinion. We see little basis for this criticism and doubt whether the decree varies from the opinion in any respect, but, if it does, Judge Hincks still has the interlocutory orders under his control and can amend the decree accordingly. It seems proper to say for the benefit of future proceedings that all the District Court should do is to provide for the payment, from the proceeds of sale of the bonds, of the costs and expenses and for the distribution of the residue ratably among the trustees in bankruptcy. The proofs of claim against the estate in the hands of James E. Wheeler as receiver of the Mechanics' Bank and the extent to which they may be severally allowed are matters for disposition by the state court in the Connecticut receivership.

Contrary to our usual custom, we have discussed the merits of this case in the hope of simplifying future proceedings and avoiding any further appeal.

We hold the appeal premature, and direct that it be dismissed.