## ADAMS v. CRIBBIS, City Treasurer, et al.
### No. 10736.

District Court, D. Colorado.
Nov. 12, 1936.

724

Arthur E. Aldrich, of Idaho Springs, Colo., for plaintiff.

F. E. Collom, of Idaho Springs, Colo., and W. M. Bond and J. G. Holland, both of Denver, Colo., for defendants.

SYMES, District Judge.

On motion to strike answer.

This suit is by the receiver of the First National Bank of Idaho Springs against Cribbis, as Treasurer of Idaho Springs, and the City of Idaho Springs, to recover an alleged preferential payment by plaintiff's predecessor receiver to said city. It is alleged that at the time of the closing of the bank the city had on deposit therein $11,617.26 in three different accounts. That the bank had unlawfully pledged certain of its assets, consisting of bonds and securities, to secure the same; that after the bank closed the plaintiff's predecessor redeemed the pledged securities by various payments, amounting to $11,617.26; that these payments were illegal and invalid, and the suit is to recover the same, less dividends paid.

The answer admits the material facts, and alleges that the pledge agreement was valid, and sets up several affirmative defenses, i. e., that in a suit in the state court brought by the City of Idaho Springs after the closing of the bank, against Cribbis as Treasurer, and her surety, the Independence Indemnity Company, a stipulation was entered into by the parties to that suit recognizing the pledge as valid, and agreeing that the securities pledged should be sold and the city repaid the amount of its deposit, less dividends.

That a controversy having arisen between the receiver of the bank and the defendant relative to the validity of the pledge, the agreement above referred to was entered into. That it amounted to an accord and satisfaction, pursuant to which the pledged securities were delivered to the receiver of the bank for sale under instructions from the Comptroller of the Currency. That the agreement is fully executed. Another defense is laches.

One fundamental question is raised by the motion—the right of a national bank to pledge its assets as security for deposits, in the absence of statutory authority. This court has passed upon this question before and it should be settled once and for all. The identical question was decided in the late case of O'Connor v. Rhodes, 65 App.D.C. 21, 79 F.(2d) 146, affirmed by the Supreme Court, U. S. Shipping Board Merchant Fleet Corp. v. Rhodes, 297 U.S. 383, 56 S.Ct. 517, 80 L. Ed. 733. It held that a pledge of securities by a bank to secure deposits of the Alien Property Custodian and the Fleet Corporation, respectively, from which payment in full of their deposits was made by the receiver upon the insolvency of the bank, was invalid in the absence of a statute authorizing national banks to secure deposits of money by public officers generally, or by such agencies specifically. Citing Texas & Pacific R. Co. v. Pottorff, 291 U.S. 245, 54 S.Ct. 416, 78 L.Ed. 777, and Marion v. Sneeden, 291 U.S. 262, 54 S.Ct. 421, 78 L.Ed. 787. Further, that moneys deposited by the Comptroller of the Currency and secured by a pledge of bank's assets was valid, because of the statute specifically requiring the Comp-

troller to take security for the particular funds in question, to wit, funds of insolvent national banks. The case further held on the authority of Cook County Nat. Bank v. U. S., 107 U.S. 445, 2 S.Ct. 561, 27 L.Ed. 537, and Branch v. U. S., 100 U.S. 673, 25 L.Ed. 759, that in the absence of statutory authority for the securing of public moneys deposited in national banks by the Secretary of the Treasury, the bank is simply a debtor of the United States precisely as are other depositors. In Texas & Pacific R. Co. v. Pottorff, supra, the Supreme Court specifically held that national banks lacked power to pledge their assets to secure private deposits, and in Marion v. Sneeden, supra, said that banks do not have power to pledge assets to secure any public deposits, except where the power is specifically granted by Congress, and that therefore a national bank cannot legally pledge assets to secure funds of a state or of a political subdivision thereof, except it be located in a state in which state banks are authorized so to do, as permitted by the 1930 amendment to the National Banking Act.

Session Laws of Colorado 1927 (chapter 65, § 7, p. 203) provide: "No bank shall pledge or hypothecate any of its securities except as collateral for direct bills payable and (or) for the protection of public funds, or moneys in said bank, in accordance with statutes now or hereafter enacted." We are not advised of any statutory provision, or decision of the Supreme Court of Colorado since the enactment of this statute, that authorizes the pledging of the securities of a state bank to guarantee the deposits of a city or town in Colorado. In Awotin v. Atlas Exchange Nat. Bank, 295 U.S. 209, 55 S.Ct. 674, 79 L.Ed. 1393, it was held that one who makes an unlawful contract with a national bank is charged with knowledge of the statutory prohibition against such an agreement, and may not hold the bank to the forbidden contract on the ground of estoppel. In the course of the opinion the court states that contracts made by national banks in violation of statutes relating thereto are invalid, not merely on account of the absence of the power of the bank to enter into the same, but because there is a total prohibition of liability growing out of such a transaction, whatever its form; calling attention to the well-known rule that national banks are public institutions, and the object of the statute is to protect their stockholders, depositors, and the public from the hazards of contingent liabilities.

It follows that neither the Comptroller of the Currency, nor his receiver, had any authority to in any way waive the statutory prohibition; that the defendants were charged with knowledge of the law; and that the stipulation, Exhibit 1 (which we note in passing was not made between the parties to this suit), is wholly null and void, in so far as the bank or its receiver is concerned.

An accord and satisfaction or compromise, like all other contracts, must be grounded upon a valid consideration. The parties here attempted to compromise an act of the receiver absolutely void. It could not form the basis of an honest dispute, or rise even to the dignity of a doubtful claim, such as receivers are permitted to compromise. See Judge Knox' opinion in Baldwin, Receiver, v. Chase Nat. Bank of N. Y. (D.C.S.D.N.Y., August, 1936) 16 F.Supp. 918.

The motion to strike the answer and defenses is granted, and a decree in accordance with the prayer of the bill may be entered.