**DIXON v. GAGE et al., and five other cases.**

Nos. 581, 836, 837.

District Court, E. D. South Carolina.

April 9, 1937.

R. Beverley Sloan, of Columbia, S. C., for petitioner Dixon.

Donald Russell, of Spartanburg, S. C., for petitioner Conyers.

Chas. W. McTeer, of Chester, S. C., and Nichols & Russell, of Spartanburg, S. C., for petitioner Leonard.

Benet, Shand & McGowan, of Columbia, S. C., for respondent receivers.

MYERS, District Judge.

These are petitions, filed by the petitioning receivers of insolvent national banks in process of liquidation, to have the court require the respondent receivers of Peoples State Bank of South Carolina to pay over to them the proceeds of sale of certain securities pledged by officers of the several national banks to secure deposits made by said respondent receivers, acting under order of this court directing them to require security for all deposits made by them as such receivers in the process of liquidation of the said Peoples State Bank of South Carolina.

Petitioners allege that the officers of the said several national banking institutions were without authority to pledge securities to secure deposits, and that they are entitled to recover, specifically under the authority of Texas & Pacific R. Co. v. Pottorff, 291 U.S. 245, 54 S.Ct. 416, 78 L.Ed. 777.

The opinion of Mr. Justice Brandeis in the Pottorff Case would appear to be conclusive on the lack of authority of a national bank to pledge securities for private deposits; to assert the duty of a receiver of a national bank in liquidation to seek recovery of securities so pledged by the officers of the bank in the regular course of business; and to eliminate any question of the right in an action involving private deposits to restitution of the deposits as a requisite to recovery of the securities. The court says, 291 U.S. 245, on page 252, 54 S.Ct. 416, 78 L.Ed. 777:

"The railway contends that the bank had power to make the pledge; that even if the bank did not have such power, the receiver is not in a position to question the validity of the pledge; and that even if he is not estopped from doing so, he may not disaffirm it without returning the consideration therefor received by the bank. We are of opinion that none of these contentions is sound. * * *

"National banks lack power to pledge their assets to secure a private deposit. The measure of their powers is the statutory grant; and powers not conferred by Congress are denied," citing Smith v. Baltimore & O. R. Co. (D.C.) 48 F.(2d) 861; Baltimore & O. R. Co. v. Smith (C.C.A.) 56 F.(2d) 799; Illinois Central R. Co. v. Rawlings (C.C.A.) 66 F.(2d) 146.

Respondent receivers of Peoples State Bank of South Carolina seek to differentiate this from the Pottorff Case, and the case of Marion v. Sneeden, 291 U.S. 262, 54 S.Ct. 421, 78 L.Ed. 787, decided by Mr. Justice Brandeis on the same date, under several specific defenses set out in their answer. In connection with consideration of these several defenses, a statement of the essential facts is necessary.

Peoples State Bank of South Carolina, a banking corporation under the laws of the state of South Carolina, with principal offices in the city of Charleston, and having some forty branches throughout the state, failed to reopen for business on the 2nd day of January, 1932. This court assumed jurisdiction on bill filed by a nonresi-

dent; appointed receivers, of whom the two named defendants continue now in office; and an order was entered by Hon. J. Lyles Glenn, United States District Judge, on the 4th day of February, 1932, with the following provision:

"That all of the funds coming into their hands as receivers shall be deposited in banks located in South Carolina, so far as may be practicable and advisable in their opinion, national or state, in such proportions as they shall see fit. With the exception of a revolving and operating fund of $75,000 dealt with more specifically in a further paragraph of this order, such receivers shall require security for the funds deposited. In taking this security for these deposits, the receivers shall require security within the following classes:"

Pursuant to said order, the respondent receivers entered into agreement with the national banking institutions now represented by the petitioning receivers; as a result of which, securities within the approved classes were turned over to a trustee and deposits made; the agreements in each instance provided for the sale of the said securities by the trustee, upon the approval or direction of the respondent receivers, in whole or in part, without notice, and without responsibility for prices obtained, and to return to the pledger bank any surplus of the proceeds of sale after respondent receivers should have been indemnified for any and all loss on account of said deposit or deposits.

After the closing of the said national banking institutions, and with full notice to the liquidating agents in charge of the several national banks, the trustee disposed of the said pledged securities and applied the proceeds in liquidation of the balance due to respondent receivers, in conformity with the pledge agreement.

At the time of the failure of the Peoples State Bank, the United States Treasury Department asserted a statutory lien on all of the assets of the bank in the hands of the receivers not otherwise specifically pledged, in the amount of $1,849,546.35, and this deposit was held by order of this court to have preference over unsecured depositors and general creditors. This order was filed December 1, 1932.

The Comptroller of the Currency being advised of the situation with reference to the war loan deposit and the order of the court as to depositories, was asked by respondent receivers for a ruling on their right to have their deposits in national banks secured as required by order of this court. On December 7, 1932, the Comptroller wrote to the receivers as follows:

"Although we are of the opinion that a Federal Court Receiver, as such, is not in that capacity alone entitled to obtain collateral security for his deposits with a National Bank, and we would not approve any such general practice by National Banks of securing such deposits, yet under the circumstances of this individual case, inasmuch as in the final analysis the protection of the interests of the Government of the United States is involved, and further having in mind the fact that a National Bank has been considered as an agency of the Government created in the furtherance of the Government's financial interests, we believe that as a matter of policy the power of such National Bank to secure these deposits under the circumstances should not be questioned, and this office will not disapprove this particular pledge."

Respondent receivers thereafter maintained the several secured deposits for the accumulation of funds to be disbursed under the orders and rulings of this court, and the lien on their funds of the war loan deposit account was finally liquidated and discharged about September 1, 1933. Thereafter, loans with New York banks and with the National Credit Corporation to Peoples State Bank were paid, and the collateral security held for said loans was returned to respondent receivers, who have since paid dividends of 30 per cent. to general creditors.

The sale by the trustee of the securities pledged to respondent receivers followed the insolvency of the pledging banks and was reported to the Comptroller, who thereupon advised the several liquidating agents that no objection would be made to the disposition of the bonds, and to the application of the proceeds in conformity with the existing agreement; and said liquidating agents were directed by the Comptroller to make appropriate entries on their books to show that the pledged bonds had been sold and the several accounts closed.

In their return to the rule, the respondent receivers first contend that the funds so deposited under said agreement and as a result of said security were public moneys held by them as trustees for the payment

of the preferred war loan deposit, and, as such, funds for which a national bank could give security.

Standing alone, this asserted bar to the recovery sought by petitioners would seem to be conclusively and effectively in conflict with the Pottorff decision:

"National banks lack power to pledge their assets to secure a private deposit. The measure of their powers is the statutory grant; and powers not conferred by Congress are denied. For the act [Act of June 3, 1864, c. 106, Sec. 8, 13 Stat. 101; R.S. 5136; 12 U.S.C. Sec. 24, Seventh (12 U.S.C.A. § 24, Seventh)] under which national banks are organized constitutes a complete system for their government. Cook County National Bank v. U. ·S., 107 U.S. 445, 448, 2 S.Ct. 561, 27 L.Ed. 537; California Bank v. Kennedy, 167 U. S. 362, 366, 17 S.Ct. 831, 42 L.Ed. 198; First National Bank v. Missouri, 263 U.S. 640, 44 S.Ct. 213, 68 L.Ed. 486. Confessedly the power to pledge assets to secure a private deposit was not granted in specific terms."

The court also holds that officers of a national bank may pledge securities only to the Secretary of the Treasury upon demand for public moneys deposited, and as to this says:

"The duty of the Secretary to demand a pledge authorizes a national bank to make it."

This right and consequent authority, as a result of the act of Congress, is said to negative the assumption that the power to pledge assets to secure deposits is included in the incidental powers of section 8 of the act (13 Stat. 101).

So with reference to the extension of this power to secure public moneys, the United States Court of Appeals for the District of Columbia, in an opinion by Mr. Justice Groner, O'Connor v. Rhodes, 65 App.D.C. 21, 79 F.(2d) 146 (May 14, 1935), holds as ultra vires and invalid the pledge of assets by a national bank to secure deposits to the credit of the Alien Property Custodian, and of the United States Shipping Board M. M. Fleet Corporation; at the same time upholding a pledge to the Comptroller of the Currency to secure deposits of moneys of. insolvent national banks in liquidation on the theory that his authority, under the Act of May 15, 1916 (39 Stat. 121 [12 U.S.C.A. § 192 and note]), to require security for such deposits, authorized the action of the officers of the bank in making the pledge.

The authorities negative the contention of the respondents that the deposits in question were in any sense public moneys, entitled to priority or for which security may be legally demanded or given, on that ground.

The defenses of estoppel and laches may be disposed of together. The contention that the transaction in controversy having been approved by the Comptroller in its initial stages, and having been terminated with his approval and authority, cannot now be reopened, has equitable appeal, but is in direct conflict with the authorities. As to laches, the petitions in each instance were filed by leave of the Honorable J. Lyles Glenn, Judge of the Eastern and Western Districts of South Carolina, who has maintained jurisdiction and control of all matters connected with the liquidation of the Peoples State Bank—but in these actions filed a certificate of disqualification because of a former connection with one of the insolvent national banking institutions. Whether Judge Glenn's leave to file petitions was in effect an extension of his administrative order heretofore made limiting the filing of claims to September 5, 1934, may of itself be questionable. The effect, however, of the rule to show cause granted in connection with the filing of each petition was to formally bring the matter before the court for consideration of any objections properly asserted by respondents to the filing of such claims or to the validity thereof.

There is authority to support the contention that receivers of national banks are subject to ordinary rules of conduct in litigation instituted by them, notwithstanding the appointment by and control of the Comptroller of the Currency which makes them in a limited sense officers of the United States. The long delay in asserting these claims and the filing of the petitions might ordinarily have weight to support the defense of laches. That question, however, must be determined upon the particular facts of each case. This court must take notice of the difficulties of the manifold duties imposed upon receivers of banks, and assume, in the absence of any showing to the contrary, that prompt action was taken when the existence of the claims became apparent. The duty

of the receiver of an insolvent national bank in this regard is asserted in the Pottorff Case, and would hardly be denied by this court. And it is held in the case of O'Connor v. Rhodes, supra, that the receiver of an insolvent bank appointed by the Comptroller of the Currency has the duty of deciding when it is necessary to institute proceedings against debtors of the bank, and is under the control of the Comptroller of the Currency in so doing. This holding also is equivalent to the language of the decision in the Pottorff Case to the same effect. In the O'Connor Case, the right of a creditor of the insolvent bank to maintain the suit upon the refusal of the Comptroller to authorize such action by the receiver and over the protest of the Comptroller, was upheld.

And again in the Pottorff Case, the court says:

"It is the settled doctrine of this court that no rights arise on an ultra vires contract, even though the contract has been performed; and that this conclusion cannot be circumvented by erecting an estoppel which would prevent challenging the legality of a power exercised. California Bank v. Kennedy, 167 U.S. 362, 17 S.Ct. 831, 42 L.Ed. 198; McCormick v. Market Bank, 165 U.S. 538, 17 S.Ct. 433, 41 L.Ed. 817; Central Transportation Co. v. Pullman Co., 139 U.S. 24, 11 S.Ct. 478, 35 L.Ed. 55. But even if the bank would have been estopped from asserting lack of power, its receiver would be free to challenge the validity of the pledge. The unauthorized pledge reduced the assets available to the general creditors. It is the duty of the receiver of an insolvent corporation to take steps to set aside transactions which fraudulently or illegally reduce the assets available for the general creditors, even though the corporation itself was not in a position to do so."

Of course, the estoppel here claimed is against the receivers; but, as I see it, the application is the same, if the facts apply; in other words, if "the unauthorized pledge reduced the assets available to the general creditors." And, of course, if these pledges were ultra vires and void.

So it would appear that petitioners are entitled to the recovery sought unless the facts here stipulated may be held to present a case which would justify the court in concluding that the authorities cited are not conclusive in the exercise of its proper duty to protect its receivers and the funds held by them under its jurisdiction and pursuant to its orders, authority, and direction.

In the Pottorff Case, it appears that the Railway Company had been a depositor in the involved bank for some time, and, while in that relation to the bank, sought and obtained security and continued with the bank a running deposit account. Here, the several national banks concerned appear to have sought deposits in conformity with the court's orders for their conservation. The evidence is, as to some of them, that in order to secure deposits made with them, they took from their cash holdings the funds to purchase the pledged securities; which cash holdings were immediately re-established by moneys deposited by the respondent receivers—a swapping of dollars, resulting in profit to pledger banks from interest coupons on securities so purchased and pledged.

Discussing the right of national banks to borrow money, the Supreme Court, in the Pottorff Case, has this to say as to securing deposits by surety bonds: "A pledge withdraws capital assets, while the giving of a surety bond merely increases the bank's expenses."

The court finds no occasion to pass upon the legality of the latter practice, but seems to rest the decision on restitution as no requisite to recovery of securities illegally pledged, in the following language set out in the opinion, 291 U.S. 245, at pages 259 and 261, 262, 54 S.Ct. 416, 419, 78 L.Ed. 777:

"The difference between deposits and loans is fundamental and far-reaching. The amount of the deposits is commonly accepted as a measure of the bank's success; an increase of deposits as evidence of increased prosperity. * * *

"The receiver may assert the invalidity of the pledge without making restitution by paying the pledgee's claim in full. * * * Such claim under the doctrine of unjust enrichment is assimilated to an obligation of contract; and does not, in the absence of an identifiable res and a constructive trust based on special circumstances of misconduct, confer a preference over other creditors."

■ In my opinion, no reduction in the assets of the several national banks can be said to have resulted from the transactions here considered. There was certainly no showing of addition to the deposit ac-

count in any instance to "evidence increased prosperity" and thus mislead the public as to their solvency. Nor does it appear that any depositor of the said banks, at the time this agreement was entered into, pledge made, and the deposits accepted, would now share in the distribution by the liquidators of the several national banks, both of the funds deposited and the proceeds of sale of securities pledged, if recovered, in this proceeding. On the other hand, the rights of creditors and depositors of the Peoples State Bank of South Carolina were fixed when these deposits were made. The money held and to come into the hands of this court's receivers was for ratable distribution to them, equally, or with reference to priorities. At the time this question of authority of national banks to make the pledges was submitted to the Comptroller, the banks were doing business, and the court's receivers, had the ruling of the Comptroller been adverse to the legality of the pledge, could then have voided the transaction and restored the status quo as to their funds. Thus, in 1932, they made reasonable efforts to satisfy and to secure themselves under this court's order. The Pottorff decision came down in 1934. Prior decisions, so far as I have been able to find, dealt only with the question of preference, as in Cook County National Bank v. U. S., supra.

The distribution by the national banks of their assets in liquidation, if augmented by the value of the securities so necessarily pledged to this court's receivers, would reduce the returns to creditors of the Peoples State Bank and would increase the returns to creditors of the several national banks. This court's conception of justice and equity leads to the conclusion that such a shocking result should be avoided where possible.

If there was misconduct on the part of the officers of the pledging banks to the extent that they acted without authority under the national banking laws, in that view of the case, I must treat the order of this court as having weight and authority and consider these deposits as "a constructive trust based on special circumstances of misconduct." Texas & Pacific Ry. Co. v. Pottorff, Receiver, 291 U.S. 245, 54 S. Ct. 416, 420, 78 L.Ed. 777.

With reference to the weight and authority of the order of this court, it is beyond question that the officers of the pledging banks had knowledge of and acted in conformity with the terms of said order. This court, under its general powers, gave to the receivers of the bank in liquidation under its control and direction, both authority and power to require security for deposits made in national banks within the state. Thus a legal situation was established and the power conferred upon this court's receivers, which, by analogy, implies the right of national banks to pledge security as in the case of the Secretary of the Treasury (Texas & Pacific Ry. Co. v. Pottorff, supra) and in the case of the Comptroller of the Currency (O'Connor v. Rhodes, supra) so authorized by act of Congress. The extension of this principle to the facts here would be both equitable and just and should be so extended.

■ I am further of the opinion that Judge Glenn's order authorizing and requiring the receivers to secure deposits in national or state banks was the law of the case in which the receivers of the Peoples State Bank were appointed, and that by seeking deposits as a result of and acting under the provisions of that order, the receivers of the said several national banks made themselves parties to that cause to such extent as to be bound by any subsequent orders of the court with relation to said funds and securities.

Being so convinced, I am of the opinion that the parties to this controversy should be left as they are with reference to these funds. It follows that the several petitions under consideration should be denied, and the rules issued thereon dismissed, with costs.

It is so ordered.