No. 13,990.

Todd, substituted for Tighe, as receiver et al. *v.* Elkins, substituted for Cleaves, as treasurer et al.
(72 P. [2d] 696)

Decided April 26, 1937. On rehearing original opinion adhered to October 25, 1937.

Mr. Benjamin C. Hilliard, Jr., Mr. Herbert J. Newcomb, for plaintiffs in error.

Mr. C. La Vergne Harrison, for defendants in error.

*En Banc.*

Mr. Justice Holland delivered the opinion of the court.

The First National Bank of Aurora, Colorado, mentioned herein as the bank, was, on December 1, 1932, engaged in the general banking business at Aurora. Cleaves, defendant in error, was at that time city treasurer, and will be referred to as treasurer. Practically all of the funds coming into his hands as such officer

were deposited by him in a commercial account in the bank, which account had been secured by a pledge of certain assets of the bank in escrow. The treasurer was under an official bond furnished by the London and Lancashire Indemnity Company, herein called the surety. The surety, becoming dissatisfied with the form of the escrow agreement, caused the treasurer to notify the bank that he would withdraw the account unless it furnished an escrow agreement satisfactory to the surety. Thereupon the bank, under an escrow agreement provided by the Central Savings Bank and Trust Company, pledged $28,500 of the securities or assets. The bank continued in business until the bank moratorium of March 4, 1933, closing all banks, at which time the treasurer's account showed a credit balance of $10,204.78. After the moratorium period, the operations of the bank were restricted and in the hands of a conservator until November 1, 1933, when a receiver was appointed to liquidate the institution. The pledge agreement and escrow as of December 1, 1932, were not disturbed until February, 1934, remaining intact with full knowledge of all parties then having to do with the control of the institution through the comptroller of currency. At this time the treasurer demanded the assets so pledged, from the Central Savings Bank and Trust Company, which refused delivery because the receiver had made claim therefor. Then followed this action by the treasurer for a declaratory judgment to determine the validity of the pledge agreement; to define the rights and legal status of the parties thereto; and for judgment directing the Central Savings Bank and Trust Company to deliver the pledged securities to him. The escrow bank, the receiver, and the surety company all were made defendants.

The complaint set out the pledge agreement; alleged the authorization of the board of directors of the bank; the reliance of the treasurer upon the pledge agreement in making deposits in the bank; and other matters not here material.

The receiver demurred to the complaint for insufficient facts, and on the further ground that the treasurer brought the action in his official capacity, while the pledge agreement was given to him in his individual capacity, thereby creating a defect of parties plaintiff; that there is a misjoinder of parties defendant because the surety company is not a necessary or proper party since its rights or liabilities could not be determined in the action. This demurrer was overruled, and a demurrer of the surety company on similar grounds, as related to it, was sustained. The receiver answered by general admissions and denials, and for a second answer alleged that the treasurer was not the real party in interest; third answer, the pledge agreement was ultra vires and void because the bank had no right or power to enter into or make such agreement; fourth answer, that the bank was entitled to a setoff against debts owed by it; that the deposits here involved were the property of the city, and that the treasurer other than as representative of the city had no right, title or interest therein; that at the time of the suspension of the bank, the city was indebted to the bank in a sum exceeding the amount of the deposit by virtue of the fact that the bank was the owner of bonds and warrants of the city in excess of such amounts; fifth answer, a general repetition of other answers. On the treasurer's motion, the second, fourth and fifth answers were stricken. In addition to a general replication, a further and separate reply set forth that the officers and directors of the bank executed and delivered the pledge agreement with the opinion and under the belief that they possessed the power and authority to make the same and at all times represented to the treasurer that they had such authority and that the treasurer believed and relied thereon and was thereby persuaded to so lend the public funds in his hands to the bank, and that the deposits were made solely because of such belief and reliance; that the bank, its stockholders and creditors had the use and benefit of the funds so loaned or deposited and on that ac-

count, the receiver, the bank and its creditors, are estopped from asserting that the bank exceeded its power or authority in the execution of the agreement or the pledging of the assets, as provided therein.

Upon the issues thus framed and after trial, the lower court found that the bank had power to execute the pledge agreement and that it was binding upon and enforceable against the receiver; that the assets and securities therein described were subject to a lien in favor of the treasurer to secure to him payment of the sum owing by the bank, and it entered judgment accordingly with appropriate orders for the satisfaction of the same. The cause is here presented for our consideration under the usual practice.

The twenty-eight assignments of error lead to the consideration of the argument of receiver as plaintiff in error under the following general heads: (1) The action is not maintainable by the treasurer; (2) receiver is entitled to a setoff; (3) rights of creditors are fixed as at date of bank's suspension; (4) bank was without power to pledge assets to secure city deposit; (5) bank was without power to pledge assets to secure a private deposit; (6) pledge agreement is contrary to public policy; (7) receiver is not estopped to assert the invalidity of the pledge.

As abstracted, the pledge agreement and the escrow agreement involved herein are as follows:

"Whereas, John L. Cleaves, City Treasurer of Aurora, Colorado, has deposited, or is about to deposit, City Funds in the First National Bank of Aurora, Colorado, and as security for the prompt payment thereof, upon demand, the First National Bank of Aurora, Colorado, has pledged with the said John L. Cleaves, City Treasurer of Aurora, Colorado, certain securities described as follows:

"Bonds of North Denver Paving District No. 6— $3000.00

"Aurora Water Bonds—$2500.00

"Warrants, Aurora Sewer District No. 1—$12000.00

"Warrants, Aurora Water District No. 2—$11000.00 with right on the part of said John L. Cleaves, City Treasurer, from time to time, to demand such additional securities as he may deem sufficient as security for City Funds deposited or to be deposited with full power and authority to said John L. Cleaves, City Treasurer, in case of default of said The First National Bank of Aurora, Colorado, in the repayment to said John L. Cleaves, City Treasurer, on demand, of said City Funds deposited, to immediately sell, assign and deliver the whole or any part of such securities, or any substituted therefor, or additions thereto, at any broker's board, or at public or private sale, at his option, and at any time or times thereafter, without advertisement or notice to said bank.

"After deducting all legal and other costs and expenses for collection, sale and delivery, to apply the residue of the proceeds of such sale or sales so made to the payment of the amount due from said bank on said City deposits.

"Provided, however, that interest coupons attached to said bonds shall be clipped and cashed, and the interest on said warrants collected, when due, by the Central Savings Bank and Trust Company, of Denver, Colorado, and credited to the account of the First National Bank of Aurora, Colorado.

"Signed and sealed this 1st day of Dec., 1932.

"(Seal) The First National Bank of Aurora, Colorado.

"Attest: By T. F. Gilligan, President; D. I. Sutter, Cashier.

"The above described securities, totalling $28,500, are held by the undersigned for safekeeping to secure John L. Cleaves, City Treasurer, of Aurora, Colorado, against any loss as stipulated above.

"Dated at Denver, Colorado, this 1st day of Dec., 1932.

"The Central Savings Bank & Trust Company.

"By H. T. Bowen, Vice President."

The treasurer asserts and the receiver denies, the right of the bank to pledge a part of its assets, as it did in this case, under the provisions of section 7, chapter 65, S. L. 1927, that: "No bank shall pledge or hypothecate any of its securities except as collateral for direct bills payable and (or) for the protection of public funds, or moneys in said bank, in accordance with statutes now or hereafter enacted."

While the receiver, plaintiff in error, presents interesting arguments under the hereinbefore outlined headings, we are inclined to the view that the determination of this action rests upon the construction of the above quoted statute. The receiver contends that the bank, being a national bank, had no power to pledge any part of its assets to secure a deposit of the nature here involved, because not authorized under the law of the state where the bank is located, and is, therefore, controlled by an act of Congress dated June 25, 1930, reading in part as follows:

"Any [national banking] association may, upon the deposit with it of public money of a state or any political subdivision thereof, give security for the safekeeping and prompt payment of the money so deposited, of the same kind as is authorized by the law of the state in which such association is located in the case of other banking institutions in the state." 12 U. S. C. A., c. 2, §90.

Under this federal act if there is a statute of the state of Colorado, where the bank is located, authorizing the pledging of its assets to secure the repayment of deposited public funds, then the bank, being a national bank, had the right to pledge the securities as was done in this case. Counsel for receiver, contends in effect, that under section 7, supra, the bank had no right, on December 1, 1932, to make the pledge of the securities as here, because there was no existing statute giving it such authority. We are of the opinion that under a proper construction of said section there was ample, clear authority for the pledging by the bank of its assets to secure the pro-

tection of public funds deposited with it, and further that the bank had the right, under this statute, to pledge its securities or assets for any monies deposited by a public official and required by statute to be secured. In other words, this Colorado statute prohibits banks from making such pledges or hypothecations of its securities with certain exceptions, and those exceptions are specified. The last exception is, ''or moneys in said bank,'' that are there in accordance with statutes then or thereafter enacted. That this meaning and construction of the statute is recognized and accepted, is evidenced by legislative expression in section 1, chapter 178, S. L. 1935, a part of which is as follows:

''* * * Where a depository bond or bonds or the deposits in escrow of approved securities to secure any such deposits shall be required of any such bank, trust company or other financial institution so accepting such deposits, the said public officials who by virtue of their office have the aforementioned public funds in their custody or possession or under their control, are hereby authorized to pay all necessary premiums upon such depository bonds and all necessary escrow fees or charges in connection with the deposit of such approved securities out of any funds not otherwise appropriated. * * *.''

Recognizing that banks had the authority to pledge their securities or assets to secure the deposits of public funds when so required as here, the legislature made provision for the payment of the charges incident to such pledges. It would not so have concerned itself about an unauthorized or illegal pledge. If there is any doubt as to the construction we have placed on the statute in question, it is removed when the subsequent statutes on this general subject are considered in connection therewith. Harmonization of the foregoing acts obtains, because it is clear that the later statutes are an extension of the powers possessed under the then existing grant. If the receiver's contention is correct; that is, that the bank had no statutory power to make the pledge, then the ex-

ceptions named in the statute are only confusing sur-
plusage.

■■ The pledge, having been officially required,
and lawfully made for the use, benefit and protection of
the treasurer as the custodian of public funds entrusted
to his keeping, he was the proper person, in his official
capacity, to bring this action for a determination of his
rights and interests involving the pledged securities, that
he might more fully discharge his official trust. In so pro-
ceeding he could in no wise be liable to a judgment of
setoff for debts he did not owe to the receiver. The re-
ceiver's claim for setoff was based on the ground that
the city was indebted to the bank by virtue of bonds or
city obligations owned by it. That matter is one which
concerns the bank and city only, and is to be settled at a
time when the bonds have matured; in no way could a
cause of action for payment of such obligations be main-
tained against the treasurer.

Further discussion seems unnecessary. The judgment
in favor of the treasurer, and directing that disposition
be made of the securities for his official benefit and ac-
cording to his order, was right and is affirmed.

Mr. Justice Hilliard not participating.