B.J. Thornberry Deputy State Treasurer Department of the Treasury 140 State Capitol Denver, CO 80203
Dear Ms. Thornberry:
I am writing in response to your letter requesting a legal opinion concerning the adequacy of present procedures for pledging collateral to secure public deposits in the event of the failure of a bank or savings and loan association. You advise that presently the state treasurer follows the statutory procedures established by the Public Deposit Protection Act of 1975, article 10.5, title 11, C.R.S. (1986 Supp.), and the Savings and Loan Association Public Deposit Protection Act, article 47, title 11, C.R.S. (1986 Supp.). The statutory requirements pertaining to each type of financial institution are very similar in most respects and will be referred to collectively as the Public Deposit Protection Act or the "PDPA". You are concerned whether the Federal Deposit Insurance Corporation (FDIC) and the Federal Savings and Loan Insurance Corporation (FSLIC) would honor pledges of collateral made pursuant to the PDPA in the event a financial institution fails and there is inadequate federal insurance coverage for all public deposits.
QUESTION PRESENTED AND CONCLUSION
Is the pledge of eligible collateral by a public depository pursuant to the requirements of the PDPA sufficient to protect uninsured public deposits against the claims of other creditors in the event of the failure of a public depository?
 Yes. The PDPA establishes a trust fund or special deposit for public deposits secured by eligible collateral pledged pursuant to the PDPA. The receiver of a failed institution would be required to apply the proceeds of the eligible collateral to pay public deposits rather than satisfying the claims of other creditors.
ANALYSIS
Governmental units, including the state, are authorized to deposit public funds in banks and savings and loan associations having their principal offices in the state. Sections 11-10.5-118 and 11-47-118, C.R.S. (1986 Supp.). Public deposits must be made with eligible public depositories pursuant to statutory requirements designed to protect public deposits by requiring that deposits be either federally insured or secured by eligible collateral.
You have advised that in the event of the failure of a public depository, the state would expect to recover uninsured public deposits from the sale of eligible collateral pledged pursuant to the PDPA. The FDIC is responsible for liquidating the assets of failed national banks. Its counterpart for national savings and loan associations is the FSLIC. In the event of the failure of a state chartered bank or savings and loan association, the appropriate state officials are empowered to delegate liquidation powers to the FDIC or the FSLIC, as discussed below.
During a meeting earlier this year with the general counsel for the FDIC, you were told that the FDIC may treat the state and other governmental units as secured creditors only if they have perfected a security interest in the pledged eligible collateral according to the principles of applicable state law. If not a secured creditor, then governmental units may have no right to be paid from the sale of the pledged eligible collateral and would stand in line with other unsecured creditors of the institution.
In the absence of statutory provision, the common law of Colorado did not recognize the state as having a preferred creditor status for public moneys deposited at an insolvent financial institution. Todd v. Elkins, 101 Colo. 269, 72 P.2d 696
(1937); see United States Fidelity Guaranty Co.v. McFerson, 78 Colo. 338, 241 P. 728 (1925); Adams v.Cribbis, 17 F. Supp. 723 (D. Colo. 1936). The PDPA, which is discussed in more detail below, constitutes legislative direction for the safekeeping and prompt payment of public deposits. It sets out express instructions for the pledge of eligible collateral for uninsured public deposits, measures which apply to both state and federal chartered financial institutions.[1]
Examination of the PDPA demonstrates that the Colorado general assembly did not intend that a governmental unit must satisfy the technical requirements of the Uniform Commercial Code for perfecting a security interest in order to protect public deposits. The PDPA sets up rules which establish a special deposit or trust relationship between the financial institution and a governmental unit, secured by eligible collateral pledged pursuant to the requirements of the PDPA.
The term "eligible collateral" is precisely defined by the PDPA to include obligations of the federal government or its agencies, obligations guaranteed or insured by the federal government, certain obligations of the state and its political subdivisions, certain mortgages, and, for public deposits at savings and loan associations, "liquid assets" specified by the State Commissioner of Savings and Loan Associations. Sections 11-10.5-103(5) and11-47-103(5), C.R.S. (1986 Supp.). The PDPA requires that eligible collateral shall be held in escrow by specified financial institutions. If a bank has its own trust department, the PDPA permits the depository to segregate eligible collateral from other deposits and hold the collateral in its own trust department. Section 11-10.5-109(1), C.R.S. (1986 Supp.). Section11-10.5-109(1), C.R.S. (1986 Supp.) permits banks to deposit eligible collateral with "any depository trust company which is a member of the federal reserve system, and which is supervised by the state banking department or equivalent governmental agency responsible for regulation of banks in the state in which it is located. . . ." A similar provision also specifies depositaries which are eligible to hold pledged collateral for public deposits at savings and loan associations. Section 11-47-109(1), C.R.S. (1986 Supp.).
Regardless where the eligible collateral is held, the PDPA requires that the collateral:
 "shall be clearly identified as being security maintained or pledged for the aggregate amount of public deposits accepted and held on deposit by said eligible public depository."
Sections 11-10.5-109(1) and 11-47-109(1), C.R.S. (1986 Supp.) (emphasis added). In the event of the default of a public depository, the State Bank Commissioner (if the institution is a bank), or the State Commissioner of Savings and Loan Associations (if it is a savings and loan association), has authority to take possession of the eligible collateral, liquidate the collateral and apply the proceeds to uninsured public deposits. Sections 11-10.5-113 and 11-47-113, C.R.S. (1986 Supp.). If the FDIC or FSLIC is appointed as the receiver of an insolvent institution, the duty to seize and liquidate the eligible collateral may be delegated to the receiver by the appropriate State Commissioner. Sections 11-10.5-113(1)(e) and 11-47-113(1)(e), C.R.S. (1986 Supp.). Both State Commissioners have promulgated administrative regulations covering, among other things, the terms of custody of eligible collateral and requirements for reporting on the sufficiency of pledged eligible collateral. 3 CCR 701-4, 703-1.
As a consequence, Colorado law provides that it is the appropriate State Commissioner (or the FDIC or FSLIC as his delegate) who is empowered to recover public deposits through liquidation of pledged eligible collateral. Governmental units are not authorized to do this directly. The PDPA does not require that any particular item of collateral be specified as security for the deposits of any specific governmental unit. The law requires only that information on the sufficiency of eligible collateral held by a bank or savings and loan association be provided to the appropriate Commissioner. That information need not be directed to the governmental unit which has made deposits with that institution. Sections 11-10.5-112 and 11-47-112, C.R.S. (1986 Supp.). A governmental unit may not have any knowledge whether its deposits are adequately secured or what eligible collateral is pledged for its deposits. The burden to make those judgments rests by statute with the appropriate State Commissioner. In all these respects, the PDPA confers rights which differ markedly from those established by the ordinary perfected security interest.
The legislative purpose underlying the PDPA precludes any particular governmental unit from perfecting a security interest in specific eligible collateral for its own deposits. In practical effect, each public depositor has an interest in a pool of collateral rather than a right of recourse to specific items of collateral. The value of eligible collateral may vary with outside market conditions, leading to the possibility that on a given day the value of eligible collateral may be less than the total amount of uninsured public deposits. Since eligible collateral is pledged to secure public deposits in theaggregate, each governmental unit with uninsured deposits will be entitled only to a pro rata share of the liquidated value of the eligible collateral. See sections 11-10.5-113, 116 and 11-47-113, 116, C.R.S. (1986 Supp.). If the public deposit is not collateralized fully, a possibility exists that a public depositor may be entitled to the status of a general creditor as to the unsecured portion of its deposits.
Even where collateral is retained in the insolvent bank's own trust department, a receiver would not be entitled to treat the collateral as a bank asset. As a general principle of receivership law, the receiver of an insolvent national bank takes title to the bank's assets subject to all existing rights and equities. The receiver takes no greater rights in the property than the insolvent bank itself possessed. Tobias v.College Towne Homes, Inc., 110 Misc.2d 287,442 N.Y.S.2d 380, 385 (N.Y.Sup.Ct. 1981). See also Michie, 3Banks and Banking, § 96 (1974). Since the PDPA permits an insolvent bank to retain pledged eligible collateral in its own trust department, the receiver would be bound by the trust relationship even if it had no knowledge of the trust.Cox v. Metropolitan State Bank, Inc., 138 Colo. 576,336 P.2d 742 (1959). A receiver of the bank may not treat pledged eligible collateral as an asset of the failed bank nor apply it to other bank obligations because the receiver would not have title to collateral pledged to secure public deposits pursuant to the PDPA. See Glenn Justice Mortgage Co. v. First Nat'l.Bank, 592 F.2d 567 (10th Cir. 1979).
SUMMARY
The legislative purpose of the PDPA is to secure the safekeeping and prompt payment of public deposits. The provisions of the PDPA are inconsistent with the ordinary requirements for perfecting a security interest. Indeed if ordinary commercial law requirements were applied strictly in this situation, the legislative purpose for enacting the PDPA would be frustrated entirely and public deposits lost because no perfected security interest would exist for the benefit of a public depositor.
The PDPA establishes, as a matter of state law, a trust relationship with respect to pledged eligible collateral held to secure public deposits. No perfection of a security interest is necessary to enforce that relationship, and the receiver of an insolvent bank or savings and loan association would be bound to the same degree as the failed institution.
In the event of the failure of a public depository, it is highly likely that either the FDIC or the FSLIC will be delegated most of the statutory responsibilities of the appropriate State Commissioner. Officials in those federal agencies should be made aware of my opinion and asked in advance whether they concur. As noted above, the purpose of the PDPA is to facilitate prompt repayment of public deposits in the event of a default. If they do concur, you should provide their statements to local FDIC and FSLIC officials. Recent experience in Colorado has demonstrated that FDIC agents assigned to liquidate banks locally may not be familiar with positions taken by FDIC officials in Washington. Protracted litigation with federal agencies after the event of default would not serve the interest of the PDPA, nor would it benefit public depositors.
Very truly yours,
 DUANE WOODARD Attorney General
BANKS AND BANKING PUBLIC FUNDS TREASURER, STATE
12 C.F.R. § 545.16 (1986)
12 U.S.C. § 90 (1986 Supp.)
Section 11-10.5-103(5), C.R.S. (1986 Supp.) Section 11-10.5-109(1), C.R.S. (1986 Supp.) Section 11-10.5-112, C.R.S. (1986 Supp.) Section 11-10.5-113, C.R.S. (1986 Supp.) Section 11-10.5-113(1)(e), C.R.S. (1986 Supp.) Section 11-10.5-116, C.R.S. (1986 Supp.) Section 11-10.5-118, C.R.S. (1986 Supp.) Section 11-47-103(5), C.R.S. (1986 Supp.) Section 11-47-109(1), C.R.S. (1986 Supp.) Section 11-47-112, C.R.S. (1986 Supp.) Section 11-47-113, C.R.S. (1986 Supp.) Section 11-47-113(1)(e), C.R.S. (1986 Supp.) Section 11-47-116, C.R.S. (1986 Supp.) Section 11-47-118, C.R.S. (1986 Supp.)
3 CCR 701-43 CCR 703-1
TREASURY, DEPT. OF BANKING, DIV. OF
The pledge of eligible collateral pursuant to the Public Deposit Protection Act establishes a trust fund or special deposit which protects public deposits at an insolvent bank.
[1] National banking associations generally are prohibited from collateralizing deposits, but are authorized to give security for the safekeeping and prompt payment of the deposits of a state or its political subdivisions "to the same extent and of the same kind as is authorized by the laws of the State in which such association is located in the case of other banking institutions in the State." 12 U.S.C. § 90 (1986 Supp.) A similar federal regulation authorizes national savings and loan associations to pledge security for public deposits if required to do so by state law. 12 C.F.R. § 545.16 (1986).